# Commonwealth *v.* Exler, Appellant.

*Criminal law—Murder—Rape—Statutory rape—Act of March 31, 1860, Secs. 74, 91, P. L. 382—Act of May 19, 1887, P. L. 128.*

1. It is only by the common law that murder is defined; the statute law attempts no definition of this crime but only prescribes a punishment for its commission and the definition of murder under the several statutes is to be taken in the common law sense.

2. The Act of March 31, 1860, Sec. 91, P. L. 382, defining rape and providing the penalty for its commission involved no departure from the common law meaning of rape, which always and everywhere made want of consent on the part of the female the criterion and not only the criterion, but the essential element without which there could be no such crime. No conviction for felonious rape upon a child over the age of ten years could be had under the act, except as the evidence showed want of consent.

3. The Act of May 19, 1887, P. L. 128, denouncing sexual intercourse with a female above the age of ten years and under sixteen years with or without her consent as felonious rape, makes that a felonious rape which before was not rape.

4. The Act of March 31, 1860, Sec. 74, defining a homicide when committed in the perpetration of or attempt to perpetrate a rape as murder of the first degree did not create a new offense but merely prescribed the penalty for an offense already existing.

*Statutes—Penal statutes—Statutory rape—Act of May 19, 1887, P. L. 128—Construction—Constructive crime—Murder.*

5. When a criminal statute calls for construction, it is not the construction that is supported by the greater reason that is to prevail, but that one which, if reasonable, operates in favor of life and liberty. All doubts concerning the interpretation of a penal statute are to be resolved in favor of the accused.

6. When an offense is created by statute and the same statute provides a penalty or mode of punishment, only that which the statute provides can be followed. While remedial laws may extend to new things not in esse at the time of the making of the statute, penal laws will not, nor will they extend to an offense created and defined by subsequent statutes.

7. The legislature in creating by the Act of May 19, 1887, the new offense which it called felonious rape, although the new offense lacked the one and only element which at common law distinguished rape from ordinary unlawful intercourse, did not in-

tend to attach to the word a meaning which theretofore attached to common law rape only, so that an unintentional homicide occurring in its commission became murder of the first degree.

8. Where on the trial of one accused of murder it appeared that the prisoner, a man of twenty-five years of age, had attempted to have sexual intercourse with deceased, a girl of twelve and a half years; that injuries had thereby been inflicted upon her person, and that death had resulted from the shock and exposure which she had experienced, but lack of consent was not shown, a conviction of murder of the first degree, and sentence of death was erroneous; the word rape as used in the Act of March 31, 1860, Sec. 74, P. L. 382, could not be extended to include within its scope the offense denounced by the Act of May 19, 1887, P. L. 128.

Mr. Justice Moschzisker dissents.

Argued Oct. 20, 1913. Appeal, No. 220, Oct. T., 1913, by defendant, from judgment of O. & T. Allegheny Co., Jan. T., 1913, No. 10, on verdict of guilty of murder of the first degree, in case of Commonwealth of Pennsylvania v. Edward Exler. Before Fell, C. J., Mestrezat, Potter, Stewart and Moschzisker, JJ. Reversed.

Indictment for murder. Before Haymaker, J.

The facts appear by the opinion of the Supreme Court.

The jury found a verdict of guilty of murder of the first degree upon which sentence of death was passed. Defendant appealed.

*Error assigned,* among others, was in refusing defendant's motion for binding instructions, for a new trial and in arrest of judgment.

*Robbin B. Wolf,* with him *A. M. Simon,* for appellant.

*Richard W. Martin,* with him *William A. Blakeley,* for appellee.

Opinion by Mr. Justice Stewart, January 5, 1914:

The prisoner stands convicted of murder of the first degree. It is for us to inquire whether or not the in-

gredients necessary to constitute murder of the first degree have been proved to exist. The dead body of Lillian W. Schadle, a young girl twelve-and-a-half years of age was found on the evening of 28th November, 1912, in a reservoir a short distance aside from the thoroughfare leading from East Pittsburgh to Wilkinsburg, in Allegheny County. The last time this girl had been seen alive was the evening of the day previous. The autopsy disclosed nothing to indicate that death had resulted from drowning; on the contrary, the medical testimony was to the effect that it had not so resulted. Suicidal death was therefore eliminated from the case. The only marks of external violence appearing on the body were a laceration of the perineum for a depth of about one inch, and a blood shot eye, to which latter no particular significance was attached. It was the contention of the Commonwealth, and all the testimony adduced was in support of this one contention, that the prisoner, a man of about twenty-five years of age, on the evening before the discovery of the body, had perpetrated or attempted to perpetrate rape on the person of this girl; that while so engaged he inflicted these several injuries upon her person, and that shock had resulted in consequence of which she died. The witness who performed the autopsy supported the Commonwealth's contention to this extent, that death had resulted from shock and exposure following upon the injury to the perineum. It would serve no purpose in this connection to review the evidence by which it was sought to connect the prisoner with the offense. For present purposes it may be assumed that the death of this girl resulted through the instrumentality of the prisoner, and in the way and manner the Commonwealth claims. Does the case then present the ingredients necessary to constitute the offense of which the prisoner stands convicted? First, it is to be remembered that it was common law murder with which the prisoner was charged. It is only by the common law that murder is defined; our statute law at-

tempts no definition of this crime; all that it does is to prescribe the penalty for its commission.

"When the legislature makes use of a technical law term, its meaning must be ascertained by the common law; and therefore the definition of murder under the several statutes must be taken in the common law sense": 4 Wharton's Am. Crim. Law, sec. 930.

What then is there in this case that fastens upon the prisoner the crime of murder as so understood? By our criminal code of 1860 it is provided that,

"All murder which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery or burglary shall be deemed murder of the first degree."

The only one of these enumerated offenses thus associated in the statute with the crime of murder which concerns us here, is that of rape. It was the contention of the Commonwealth on the trial, and it prevailed with the jury, that this child whose body was recovered as we have stated, met her death at the hands of the prisoner in consequence of an attempt on his part to have carnal knowledge of her person, whether such attempt was successful or otherwise. It was a further contention, one that prevailed with the court, that if the jury found the facts to be as stated the prisoner would be guilty of murder of the first degree, whether the attempt was made with or without the consent of the child, since by our Act of May 19, 1887, P. L. 128, which is a supplement to the Act of March 31, 1860, P. L. 382, it is provided that,

"If any person shall have unlawful carnal knowledge of a woman forcibly and against her will, or who being of the age of sixteen years and upwards shall unlawfully and carnally know and abuse any woman child under the age of sixteen years with or without her consent, such person shall be adjudged guilty of felonious rape," etc.

For the same reason which requires us to attach to the

term murder as used in the Act of 1860 its common law meaning, we must attach to the word rape as it here occurs its common law meaning, each being descriptive of a common law offense, undefined by statute. At common law rape could be committed only where unlawful carnal knowledge of a female was had without her consent. Such a thing as consensual rape was unknown to the common law. When the Act of 1860 was passed, the offense of rape was committed where one had unlawful carnal knowledge of a female child under the age of ten years, because in the estimation of the common law a child of such tender years was incapable of intelligently consenting to such intercourse, and therefore the law implied that the act was without her consent. The statute of March 31, 1860, enacted what is known as our criminal code, and, as we have remarked, it nowhere defines murder; it does not make anything murder that was not murder before; all it does by the 74th section, which is the only section that concerns us at this time, is to divide common law murder into two classes or degrees, and this for no other purpose than to distinguish in the matter of punishment. An unintentional homicide committed by one in the commission of a felony such as rape, or where it occurs in the attempt to commit rape, was murder at common law. Therefore the Act of 1860 in providing for homicide when committed in the perpetration or attempt to perpetrate a rape, was not creating a new offense, was not defining as murder something that had not been murder before, but was simply prescribing the punishment for an offense already existing. It follows that the word murder where it occurs in the act is to be given its common law meaning. So too with respect to the word rape. It is also a technical word, and is to be given its common law meaning. There is nothing in the act which indicates that it was here employed in any other sense. The punishment of this offense is prescribed in the 91st section of the act

and is there referred to in the exact language of the common law. The section reads:

· · "If any person shall have unlawful carnal knowledge of a woman forcibly and against her will......such person shall be adjudged guilty of felonious rape;"

Then follows the prescribed penalty. True the section further provides that if any person of the age of fourteen years or upwards shall unlawfully and carnally know and abuse any woman child under the age of ten years, with or without her consent, such person shall be adjudged guilty of felonious rape; but this involved no departure from the common law meaning of rape which always and everywhere made want of consent on the part of the female the criterion, and not only the criterion but the one essential element without which there could be no such crime. Giving then to the word rape its technical common law meaning as it occurs in the 74th section of the act, clearly the present case is not brought within the terms of the section, since for all it appears in the evidence, the sexual intercourse, if it took place, may have been with the free consent of a female child capable of consenting inasmuch as she was at the time above the age of ten years. Had the prisoner been tried for felonious rape, except as the evidence showed want of consent, of course there could have been no conviction in the absence of proof that the offense was committed without the consent of the party.

So far we have been considering the Act of 1860 as it was originally, and have followed approvingly the very able argument of the counsel who argued in support of the appeal.

· We now come to a feature of the case which must be allowed controlling importance. By Act of May 19, 1887, P. L. 128, the provisions of the 91st section of the Act of 1860 were materially changed. The title to this amended or supplemental act reads as follows:

· "A supplement to an act entitled 'An Act to consolidate, revise and amend the penal laws of this Common-

wealth,' approved the thirty-first day of March, one thousand eight hundred and sixty, amending the 91st section thereof, defining rape and carnal knowledge of female children, and prescribing the penalty therefor." As amended by this supplemental act the 91st section of the original act now reads as follows:

"If any person shall have unlawful carnal knowledge of a woman, forcibly and against her will, or who, being of the age of sixteen years and upwards, shall unlawfully and carnally know and abuse any woman child under the age of sixteen years, with or without her consent, shall be adjudged guilty of felonious rape, and, on conviction, be sentenced to pay a fine not exceeding one thousand dollars, and undergo an imprisonment by separate or solitary confinement at labor, or by simple imprisonment, not exceeding fifteen years."

The effect of this amendment it will be at once observed is to make something felonious rape that before was not rape, either at common law or by statute, viz, consensual sexual intercourse with a female above the age of ten years and under sixteen years, and punish its commission by a fine not exceeding one thousand dollars and imprisonment by separate and solitary confinement at labor not exceeding fifteen years. As we have seen, an unintentional homicide occurring when one was engaged in the perpetration of a common law rape, was murder. Not so, however, if what the party was then engaged in was a simple misdemeanor, as the prisoner's offense would have been but for this amendment to the Act of 1860. Under such conditions he could have been convicted of no higher crime than involuntary manslaughter. Now the question suggests itself, did the legislature in thus creating a new offense and calling it felonious rape, notwithstanding it lacks the one and only element—against consent—which distinguished rape from ordinary unlawful intercourse, intend to attach to it a meaning which theretofore attached to common law rape only, thereby making an unintentional

homicide, occurring in its commission, murder of the first degree? If so, then the term rape as it occurs in the 91st section of the Act of 1860 has now a larger and wider meaning than it had when the act was passed, and now includes such a transgression as that with which the prisoner is charged. As a legal consequence, if the judgment against him be sustained, he must suffer the death penalty for an unintentional killing which before the Act of 1887 could have risen no higher in the grade of crime than involuntary manslaughter, the severest penalty for which would have been imprisonment for two years. If in express terms the Act of 1887 had declared that the commission of the new crime therein denounced —unlawful intercourse with a female child under the age of sixteen—should be adjudged felonious rape and, in addition to the penalty prescribed, should subject the offender to the penal consequences provided for in the 74th section where an unintentional killing resulted, any construction that would eliminate this latter penalty would be an arbitrary assumption of legislative power, and not interpretation. But here we have no express terms denouncing this penalty, and the legislative intention to impose it, if it can be derived at all, can be derived only by implication. Where such a case arises it is for the judicial authority to ascertain and declare the legislative meaning. It cannot be denied that the inference may be derived from the language used, that the legislature intended the amendment to have this severe effect, since it expressly makes the offense felonious rape; and it may be that such effect would fall within the spirit of the amended act as well. This of itself, however, would not be sufficient to require affirmative construction. Such inference can prevail only as it appears to be the only reasonable inference that can be derived; and it is no less true that when a criminal statute calls for construction it is not the construction that is supported by the greater reason that is to prevail, but that one which, if reasonable, operates in favor

of life and liberty: Com. v. Standard Oil Co., 101 Pa. 119, 150. And right here we encounter the rule of interpretation that forbids any construction of a penal statute that would extend its meaning beyond its words.

"No person is to be made subject to a penal statute by implication, all doubts concerning their interpretation are to preponderate in favor of the accused": Bishop's Criminal Law, sec. 225.

Not only are there no express terms in the amending act subjecting the offender to the punishment prescribed in the Act of 1860, but there is no reference in the former act to the section in the latter which is here sought to be applied. Judged solely by the words employed, the amending act is complete in itself; it defines a new offense; provides for its punishment, and with that it stops.

"The doctrine is that, when an offense is created by statute, and the same statute prescribes the penalty or the mode of procedure or anything else of the sort, only that which the statute provides can be followed": Bishop's Criminal Law, sec. 278.

Not only consonant with the rule just stated, but seemingly a corollary to it, we have another rule thus stated in Endlich on Interpretation of Statutes, sec. 325.

"Again, as illustrative of the rule of strict construction, it has been said that while remedial laws may extend to new things not in esse at the time of making the statute, penal laws will not."

The illustration given is the case of Rex v. Smith, L. R. 1 C. C., 266, 270, where an act made it felony to receive with guilty knowledge a chattel, the stealing of which was felonious either at common law or under the act, and the subsequent act made a partner who stole partnership property liable to conviction for the stealing as though he had not been a partner; it was held that to receive such stolen property was not an offense under the earlier act. The same rule may be found in 26 Am. & Eng. Ency. Law, 600, where it is thus stated:

"It has been held that penal laws should not be extended to new things which were not in being at the time when the laws were made, nor to offenses created and defined by subsequent statutes." The authorities cited in the note to the text embrace English and American cases, and included among the latter is one of our own, Com. v. Wells, 110 Pa. 463, where this is said:

"And it was long ago ruled that a penal act of Parliament cannot be extended to things that did not exist when the statute was made."

Of course the reference in these rules is to an extension of an act by implication. When the extension is by express words of a later statute no question can arise; it is only in the absence of express words extending the earlier statute that the rule applies. The latter is the case here; and this it is that makes construction necessary in order to ascertain the legislative intent. In brief, we have here an offense which was not within the purview of the 74th section of the Act of 1860, our criminal code, and was therefore not punishable thereunder, but is made an offense by amending another section of the code without referring in any way to the section of the code which attached additional penalty to a common law offense—not what we have here, but denounced under the general name—when followed by unintended homicide, the amending act providing its own appropriate penalty for the new offense it created. Can the 74th section, unamended, be extended to embrace the new offense thus created? This presents the whole question. If it can be so extended, it must be by implication, and that as we have seen, where the statute involved is penal, is forbidden. This may be said to be strict construction, but it is to be remembered that we are dealing with an issue of life or death, and strict construction is imperatively required, not to defeat the ends of justice, not to avert a merited doom, but simply to ascertain the legislative purpose which in this case, as we have tried to show, can be discovered only as we resort to the arti-

ficial aids of construction supplied by the common law. We are of opinion that the prisoner's offense does not fall within the provisions of the 74th section of the penal code, and that therefore his conviction was improper.

The judgment is reversed.

MR. JUSTICE MOSCHZISKER dissents.