Commonwealth *v.* Aurick, Appellant.

Argued October 13, 1939.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

182

*Thomas D. McBride,* for appellant.

*James W. Tracey, Jr.,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY RHODES, J., December 19, 1939:

Defendant was tried on three indictments in which he was charged with involuntary manslaughter, unlawful failure to stop and render assistance, and aggravated assault and battery by automobile, respectively. He was convicted of involuntary manslaughter only. His motion for a new trial having been refused and sentence imposed, he has appealed.

The assignments of error do not necessitate an elaborate statement of the facts. They relate to the charge of the court, the limitation of the cross-examination of a commonwealth witness, the refusal of a new trial, and the entering of sentence.

On January 10, 1939, about 6:40 p. m., appellant was operating an automobile south on Ridge Avenue in the city of Philadelphia. At or near the intersection of that avenue with Rector Street, which enters Ridge Avenue from the east, but which does not continue on the other side thereof, appellant's

automobile struck a young woman named Philomena Wilson as she was crossing Ridge Avenue, and she was killed instantly.

The charge of the court, to which practically all of appellant's argument is devoted, unquestionably gave to the jury an impression that appellant's guilt could be found if the death of the girl occurred during the commission of an unlawful act by appellant whether or not her death was the natural result or probable consequence of such act. This is a clear misapplication of the law to the facts of the case, and confusion was the inevitable result. In our judgment the evidence was sufficient to sustain appellant's conviction, and we reluctantly are obliged to reverse the judgment and grant a new trial. The conviction could be sustained at least on the ground that appellant's act or acts were not merely careless, but also so rash and reckless as to approximate unlawfulness, and that the unintended death of the girl resulted from such act or acts done in a manner which, in the mind of the law, was unlawful. Death caused by recklessly driving a motor vehicle is involuntary manslaughter (*Com. v. Micuso,* 273 Pa. 474, 478, 117 A. 211), but death occurring while committing an unlawful act is not necessarily involuntary manslaughter (*Com. v. Williams,* 133 Pa. Superior Ct. 104, 1 A. 2d 812). Whether the basis of the jury's conclusion was correct or incorrect is not ascertainable.

The first assignment of error complains of a portion of the charge in which the trial judge said, inter alia: "There are two elements involved in the definition of involuntary manslaughter. The first element is—if a defendant commits an unlawful act and that unlawful act causes the death of a person, it is involuntary manslaughter, whether he is reckless or not. In other words, if there was an unlawful act committed, that is to say, acts contrary to law, it would make no difference whether the defendant was reckless or not."

The trial judge then called the jury's attention to section 1002, art. 10, of the Act of May 1, 1929, P. L. 905, as amended by the Acts of June 22, 1931, P. L. 751, §2; July 16, 1935, P. L. 1056, §29; June 5, 1937, P. L. 1718, §2, 75 PS §501, which provides certain restrictions as to the speed at which motor vehicles shall be operated upon the highway, and to section 802.1, art. 8, of the Act of May 1, 1929, P. L. 905, as amended by the Act of July 16, 1935, P. L. 1056, §16, 75 PS §352.1, which provides certain regulations as to the lighting equipment of motor vehicles. The Act of March 31, 1860, P. L. 382, §79, as amended by the Act of April 11, 1929, P. L. 513, §1, 18 PS §2226, provides: "If any person shall be charged with involuntary manslaughter, happening in consequence of an unlawful act, it shall and may be lawful for the district attorney, with the leave of the court, to waive the felony and to proceed against and charge such person with a misdemeanor, and to give in evidence any act or acts of manslaughter, and such person, on conviction, shall be sentenced to pay a fine, not exceeding one thousand dollars, and to suffer an imprisonment not exceeding three years. . . . . . ." Appellant argues that because the amendment of 1929 merely increased the penalty for the offense although the entire section was reenacted, we must consider the crime of involuntary manslaughter as it existed in 1860, and that it cannot be predicated upon an act which was not unlawful at that time, especially an act that constitutes mere negligence. In *Com. v. Gill*, 120 Pa. Superior Ct. 22, 182 A. 103, we said that when the act is unlawful the degree of negligence is unimportant. As to the first part of the contention appellant relies upon *Com. v. Exler*, 243 Pa. 155, 89 A. 968. In that case, defendant, a man of about twenty-five years of age, was indicted for murder. It appeared that he attempted to have intercourse with deceased, a girl twelve and a half years old. From the injuries so inflicted she died. It was not shown that she did not consent to the act. The Act of

March 31, 1860, P. L. 382, §91, as amended by the Act
of May 19, 1887, P. L. 128, §1, 18 PS §2261, provided that:
"If any person shall have unlawful carnal knowledge
of a woman, forcibly and against her will, or who, being
of the age of sixteen years and upwards, shall unlaw-
fully and carnally know and abuse any woman child
under the age of sixteen years with or without her
consent, such person shall be adjudged guilty of felonious
rape ......" The court below held that these circum-
stances brought the case within the Act of 1860, supra,
section 74 of which (18 PS §2221), provides that: "All
murder ...... which shall be committed in the perpe-
tration of, or attempting to perpetrate any ...... rape
......, shall be deemed murder in the first degree
......," and warranted the verdict of guilty of murder
in the first degree. The Supreme Court held that this
was error, and that section 74 of the Act of 1860, supra,
could not be extended by implication to embrace the
new offense created by the amendment of 1887. The
reasoning of the Exler case is not applicable to the one
at bar. In the former the court was confronted with a
situation where the legislature had used a technical
legal term having a well defined meaning in the common
law. The Supreme Court pointed out that the amend-
ment of 1887 created an entirely new offense, consen-
sual rape, which was unknown to the common law, and
which lacked the one and only element, against con-
sent, that distinguished rape from ordinary unlawful
intercourse, and that the legislature having failed to say
expressly that death resulting therefrom should con-
stitute murder in the first degree the Act of 1860 should
not be extended by implication to include it. As dis-
tinguished from this situation the "unlawful act" ele-
ment in the crime of involuntary manslaughter con-
notes no particular offense known to the common law
or created by statute. It is merely what it says, an act
contrary to law. There is nothing inherent in this term
which would require us to hold, by the same reasoning as

used by the court in the Exler case, that the legislature had in mind only acts which were unlawful at that time. Although the point was not raised in such cases as *Com. v. Ernesto et al.,* 93 Pa. Superior Ct. 339, and *Com. v. Mango,* 101 Pa. Superior Ct. 385, we make reference thereto as they involved convictions for involuntary manslaughter which were affirmed on appeal to this court where the death was in consequence of an act made unlawful by statute after 1860. See, also, *Com. v. Godshalk,* 76 Pa. Superior Ct. 500; *Com. v. Ochs,* 91 Pa. Superior Ct. 528; *Com. v. Samson,* 130 Pa. Superior Ct. 65, 196 A. 564; *Com. v. Matteo,* 130 Pa. Superior Ct. 524, 197 A. 787. It is hardly necessary to say that the failure to have had the question here involved heretofore raised is, under such circumstances, not without some significance. The first assignment of error is overruled.

The fourth assignment of error refers to that portion of the charge in which the trial judge said: "It does not make any difference if the girl, who was fatally injured, did not exercise due care; that is to say, that she did not exercise the care of a reasonably prudent person.

"Contributory negligence is a bar to recovery in a civil court. If a civil action is brought for damages resulting from injuries, there can be no recovery if the person injured was negligent or careless; in other words, that the person, himself, did not exercise the care of a reasonably prudent person. However, in a criminal case that does not make any difference, except insofar as it would tend to show that the defendant was not rash in his acts. Therefore, the mere fact that the girl may have crossed on the crossing of Rector Street, or in the middle of the block, would not make any difference insofar as it would indicate that she was careless or negligent. The only bearing it would have, as I have stated to you, is if it would tend to show an absence of rashness on the part of the defendant." In

view of what we said in *Com. v. Williams,* supra, these instructions were inadequate. Assuming for the moment that they instructed the jury sufficiently with reference to what consideration might be given the conduct of deceased as bearing upon the question of whether appellant's conduct was rash or reckless, still the instructions were erroneous because they failed to inform the jury that they might also consider the conduct of deceased as bearing upon the cause of her death, in the event that it resulted not from appellant's rashness or recklessness, but from his commission of an unlawful act. In *Com. v. Williams,* supra, at page 110, we said that: "The unlawful act must be something more than an attendant condition without which the death could not have occurred; that the death must be the natural result or probable consequence of the unlawful act ...... A criminal statute must be strictly construed. If appellant's conviction is sustained, it would logically follow that, if deceased had intentionally thrown himself in front of appellant's automobile and had been killed, appellant would have been equally guilty of involuntary manslaughter. A construction that must lead to such a conclusion would be neither reasonable nor humane." Therefore, the jury in the instant case should have been instructed further that the conduct of the deceased should be considered on the question of whether her death was "the natural result or probable consequence of the unlawful act." The supreme difficulty of that part of the charge as quoted is that it completely fails to instruct the jury on a vital point, and permits the determination of appellant's guilt on unsupportable grounds. The fourth assignment of error is sustained.

The fifth assignment of error relates to certain portions of the charge concerning appellant's duty with reference to the lights of his automobile. The parts of the charge covered by this assignment are printed in

the margin.[1] The same defect with respect to the element of causation as that previously discussed under the fourth assignment of error is evident therein. They convey the impression that if appellant committed the unlawful act of driving with improper lights he was guilty of involuntary manslaughter, without regard to whether the death was the natural or probable consequence of such unlawful act. *Com. v. Williams*, supra. However, appellant contends also that the trial judge set up an erroneous measure of proof in placing upon him the absolute duty of driving with lights which cast a beam of at least 100 feet ahead as provided by paragraph (d) of section 802.1 of the Act of May 1, 1929, P. L. 905, as amended by the Act of July 16, 1935, P. L. 1056, §16,

---

[1] "I want to call your attention to two sections of the Motor Vehicle Code, which I believe are applicable to this case, and, are also principles of law which you must apply to the facts as you find them to be. The Motor Vehicle Code requires that all road lighting beams shall be so aimed and of sufficient intensity to reveal a person or vehicle at a distance of at least 100 feet ahead. In other words, the law is—when you are driving a car in the night, when lights are required, your lighting beams must be so aimed and of such sufficient intensity as to reveal a person or vehicle at a distance of at least 100 feet.

"Therefore, if an operator of an automobile is driving his car when lights are required, and, the beams of the car are such that they do not reveal a person or vehicle at a distance of at least 100 feet, such operator is violating the law, and, that is an unlawful act." (180a)

"You will observe, therefore, that the beam must be such that the driver can see 100 feet ahead; that he must drive in such a manner so that he can stop within that assured clear distance, and, he must never drive more than fifty miles an hour.

"If the operator of a car violates any of these provisions he is committing an unlawful act. You will bear these principles of law in mind that I have called your attention to and apply them to the facts as they came to you from the witness stand." (181a)

"He further testified that he was driving with his lights on, which were at a low beam; that his lights threw light for a distance of fifteen or twenty feet. ......

"Is he a witness who impresses you as trying to tell the truth? That is for you to determine. If you believe his testimony that

75 PS §352.1 (d),[2] instead of charging that appellant's duty was to operate with lights that cast a beam a safe distance ahead as required by paragraph (a), section 1032, of the Act of May 1, 1929, P. L. 905, as amended by the Act of June 29, 1937, P. L. 2329, §16, 75 PS §641(a). With this contention we do not agree. Nor do we think that these sections are conflicting. Section 802.1, 75 PS §352.1, prescribes certain regulations with reference to multiple beam road lighting *equipment;* paragraph (d) defines the minimum intensity of all beams. If appellant was operating his automobile with lights that did not meet that standard he was committing an unlawful act. Section 1032, 75 PS §641, regulates the *use* of such equipment, and requires the operator of a motor vehicle to see that his lights reveal persons and vehicles "at a safe distance in advance of the vehicle." This means that in using such lights as he is required to have by section 802.1, 75 PS §352.1, he shall take into account all the circumstances, such as the speed of his vehicle, atmospheric conditions, etc., so that the beam he is then using shall be sufficient to disclose the presence of persons or other vehicles upon the highway in time to prevent accident. Similar language is used in expressing restrictions as to speed in paragraph (a) of section 1002 of the Act of May 1, 1929, as amended, supra, 75 PS §501 (a): "No person shall drive any vehicle

---

he was driving his car with a light beam that threw a light for a distance of fifteen to twenty feet, when as a matter of fact the law is that it must be a distance of at least 100 feet, you have a right to find that he was committing an unlawful act in that he was not driving with lights that threw a beam of at least 100 feet so as to observe any person or vehicle in front of him in that distance.

"If you believe that testimony, and, that he thereby committed an unlawful act, which unlawful act resulted in the death of this girl, you would be warranted in finding the defendant guilty of involuntary manslaughter." (190a, 191a)

[2] "All road lighting beams shall be so aimed and of sufficient intensity to reveal a person or vehicle at a distance of at least one hundred (100) feet ahead."

upon a highway ...... at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead." "It follows that the assured clear distance may be long, as on a straight road in bright daylight, or it may be shortened by storm, fog, a curve in the road or other conditions. Whatever it may be, the duty imposed upon the driver is to be able to stop the vehicle safely within that distance: *Janeway v. Lafferty Bros.*, supra [323 Pa. 324, 185 A. 827]": *Gaber et ux. v. Weinberg*, 324 Pa. 385, at page 388, 188 A. 187, at page 188. The expression "at a safe distance in advance of the vehicle" as found in section 1032, 75 PS §641, should be given a like interpretation. "No principle of the law of negligence has been more frequently emphasized in recent decisions than that establishing the duty of the operator of a motor vehicle to maintain such control over it as to enable him to bring it to a stop within the range of its headlights,—a mandate fixed and unchangeable, however much the visibility be impaired by storm, darkness, fog, a curve in the road, or other conditions [cases cited]": *Hutchinson v. Follmer Trucking Company*, 333 Pa. 424, at page 427, 5 A. 2d 182, at page 183. In either case, however, whether the unlawful act consisted of a violation of section 802.1, 75 PS §352.1, or of section 1032, 75 PS §641, the jury should have been instructed that such unlawful act would not support a conviction of involuntary manslaughter unless the death of deceased was the natural result or probable consequence thereof. The fifth assignment of error is sustained.

Michael P. Corcoran, a witness for the Commonwealth, testified: "Q. Can you tell his Honor and the members of the Jury how fast that car was going? A. Well, I judge the car must have been going at least sixty miles an hour." The sixth assignment of error relates to a portion of the charge in which the trial judge said: "If you believe that testimony, that the defendant was operating his car at a speed of sixty miles an hour,

you would be warranted in finding that the defendant was unlawfully driving his car at that time and place. However, that testimony is for you to determine as to what weight should be given to it. On the other hand, if you believe that testimony, you are fully justified in reaching a conclusion that the defendant was violating the law in driving at a speed of sixty miles an hour at that point." Appellant contends that taken in connection with the charge of the court as to the "unlawful act" element of involuntary manslaughter this portion of the charge instructed them erroneously that the unlawful act could be found from the testimony of Corcoran alone. Paragraph (b) 5 of section 1002 of the Act of 1929, supra, 75 PS §501(b) 5, provides that the speed limit for all vehicles shall be 50 miles per hour, except those otherwise restricted by said act to lower maximum speeds. Paragraph (d) of the same section, 75 PS §501(d), we quote below.[3] Accordingly, appellant argues that the jury could not be permitted to find that he committed an unlawful act in violating the speed laws unless such violation was proven as required by the statute. Where the Commonwealth relies on the fact that defendant was traveling at a speed in excess of the statutory maximum as the unlawful act upon which to base a conviction of in-

---

[3] "(d) When the rate of speed of any vehicle is timed on any highway within a business or residence district, where official speed limit signs are erected, as provided in this section, for the purpose of ascertaining whether or not the operator of such vehicle is violating a speed provision of this act, such time shall be taken by not less than two (2) peace officers, one of whom shall have been stationed at each end of a measured stretch, and no conviction shall be had upon the unsupported evidence of one (1) peace officer, except as hereinafter provided, and no such measured stretch shall be less than one-eighth (1/8) of a mile in length. Under all other conditions, the rate of speed shall be timed, for a distance of not less than one-quarter (1/4) mile, by a peace officer using a motor vehicle equipped with a speedometer tested for accuracy within a period of thirty (30) days prior to the alleged violation."

voluntary manslaughter, there is merit in this contention. Otherwise, we have a paradoxical situation where strict compliance with the statute is required (*Com. v. Wolfgang*, 120 Pa. Superior Ct. 252, 182 A. 109) to convict a defendant of a summary offense with a maximum penalty of a $10 fine, and in default thereof imprisonment for not more than five days; but where the same unlawful act is made the basis of a conviction of involuntary manslaughter, the punishment for which was[4] a fine of $1,000 *and* imprisonment not exceeding three years, a less strict measure of proof is sufficient. The offense of driving at an excessive speed is purely statutory; the act both defines it and prescribes the manner in which it shall be proved. The Commonwealth may not avail itself of one and ignore the other. " 'The doctrine is that, when an offense is created by statute, and the same statute prescribes the penalty or the mode of procedure or anything else of the sort, only that which the statute provides can be followed': Bishop's Criminal Law, §278" : *Com. v. Exler*, supra, 243 Pa. 155, at page 163, 89 A. 968, at page 971; *Com. v. Wolfgang*, supra, 120 Pa. Superior Ct. 252, at page 256, 182 A. 109, at page 110. There was no evidence in this case that appellant's speed had been measured as required by the statute. Consequently, it was error to tell the jury that they might find that he had committed an unlawful act by traveling at a speed in excess of the statutory maximum. The sixth assignment of error is sustained.

But the Commonwealth is not to be so limited where evidence of the speed at which defendant drove his vehicle is offered to show that defendant operated it in a rash and reckless manner, and without due regard to

---

[4] The Act of June 24, 1939, P. L. 872, §703, 18 PS §4703, provides for a fine not exceeding $2,000, *or* imprisonment not exceeding 3 years, or both.

the circumstances.[5] In such case any competent evidence of speed would be sufficient, and the method prescribed by the statute would not be indispensable. The trial judge could properly have told the jury that they might consider this testimony in determining whether appellant had operated his automobile in such a manner. See *Com. v. Carroll,* 131 Pa. Superior Ct. 357, 200 A. 139; *Com. v. Matteo,* supra.

Appellant contends also that the testimony of Corcoran had no probative value. What has been said already makes it unnecessary to consider this question at length. Appellant did not object to it or ask that it be stricken out. On cross-examination it appeared that Corcoran had never driven an automobile, but he said that he had "ridden in cars, worked in cars, worked on trucks, and [had] been on the road for years." Appellant made no further effort to test his qualifications. Non-expert opinion as to the speed of a vehicle is competent. The inexperience of the witness goes to the weight and not to the admissibility of his testimony, and its weight is for the jury. *Dugan v. Arthurs,* 230 Pa. 299, 79 A. 626. See *Com. v. Godshalk,* supra, 76 Pa. Superior Ct. 500, 503; *Murphy v. Altoona & Logan Valley Elec. Ry. Co.,* 81 Pa. Superior Ct. 504, 508. The testimony of Corcoran was not destitute of probative value, and it would have been proper to submit it to the jury with adequate instructions in order that they might determine whether, in connection with all the other facts and circumstances, appellant operated his automobile in a careless, negligent, and reckless manner, and without due regard to the circumstances, and consequently, in the mind of the law, in an unlawful manner; and that the death resulted therefrom. *Com. v. Gill,* supra, p. 36; *Com. v. Carroll,* supra, p. 361.

---

[5] See section 1001(a) of Act of May 1, 1929, P. L. 905, as amended by Act of June 29, 1937, P. L. 2329, §3, 75 PS §481(a); section 1002(a) of Act of May 1, 1929, P. L. 905, as amended by Act of June 5, 1937, P. L. 1718, §2, 75 PS §501(a).

The seventh assignment of error is overruled. Appellant was not prejudiced by the court's refusal to permit cross-examination of Officer Thistle, a Commonwealth witness, as to all the details of a written statement made by appellant to the officer, the existence of which statement was first brought out on cross-examination. All the facts sought to be elicited by the cross-examination were eventually presented to the jury.

We find no merit in the third assignment of error which complains of the use of the word "approximate" in the charge of the court. In this respect *Com. v. Gill,* supra, and *Com. v. Matteo,* supra, were followed, and consequently this assignment is overruled.

Judgment is reversed, and a new trial is granted.