## Commonwealth *v.* Aurick, Appellant.

Argued October 21, 1940.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Thomas D. McBride,* for appellant.

*James W. Tracey, Jr.,* Assistant District Attorney,
with him *Charles F. Kelley,* District Attorney, for ap-
pellee.

OPINION BY RHODES, J., November 26, 1940:

Appellant was previously tried and found guilty of
involuntary manslaughter, and sentenced. On appeal
the judgment was reversed and a new trial granted
(*Commonwealth v. Aurick,* 138 Pa. Superior Ct. 180,
10 A. 2d 22). He was retried and again convicted of
involuntary manslaughter. His motion for a new trial
was refused and sentence imposed. His second appeal
is now before us.

We shall briefly restate the facts which brought about
the prosecution of appellant: On January 10, 1939,
about 6:40 p.m., appellant was operating an automobile
south on Ridge Avenue in the City of Philadelphia. At
or near the intersection of that avenue with Rector

Street, which enters Ridge Avenue from the east, but which does not continue on the other side thereof, appellant's automobile struck and killed a young woman named Philomena Wilson as she was crossing Ridge Avenue, which runs north and south.

On this appeal but two questions are raised by appellant: (1) The competency of Commonwealth's witness, Michael P. Corcoran, to express an opinion as to the speed of appellant's automobile; (2) the use of the word "approximate" in the charge of the court.[1]

Corcoran testified that at the time the Wilson girl was struck by appellant's automobile he was standing on the east side of Ridge Avenue about fifteen feet south of Rector Street facing in a westerly direction; that he first saw appellant's car when it was crossing Roxborough Avenue, which is the first street north of Rector Street; that deceased was crossing Ridge Avenue at the north side of Rector Street; that when struck deceased was about three-quarters of the way across Ridge Avenue. This witness also testified that he did not drive an automobile himself, but that he had ridden daily in them to and from work for a period of about three years and on other occasions. When asked whether he was able from his experience to estimate the approximate speed at which an automobile was traveling, he replied, "No." When asked how fast appellant's automobile was going at the time it struck the Wilson girl, he started to answer, "About—" but was precluded from completing his answer. He was again asked whether he was able to determine from his experience the approximate speed at which an automobile is being driven,

---

[1] "This defendant is charged with involuntary manslaughter, and the definition of involuntary manslaughter, members of the jury, is where it plainly appears that neither death nor great bodily harm was intended, but that the death was caused accidentally by some unlawful act not amounting to a felony, or by the commission of a lawful act, not merely carelessness, but so rash and reckless as to approximate unlawfulness."

and he replied: "No, sir." He was then asked: "Q. In other words, if you saw an automobile along the street could you tell about how fast that car was going? A. Pretty near the speed, thirty, thirty-five, forty. Q. Now, having seen the automobile of Aurick, could you tell about how fast it was going? Just answer yes or no to that. A. Yes." After counsel for appellant cross-examined the witness as to his qualifications, the witness testified as follows: "Q. Mr. Corcoran, in your judgment how fast was Aurick's car going at the time it struck the girl? A. About sixty. Q. About sixty what? A. Sixty miles an hour. The car was going faster than cars travel along that road."

Appellant now contends that this witness was not competent to express an opinion as to the speed of appellant's automobile for the reasons that: (1) He had no experience to enable him to judge the speed of automobiles; (2) he had stated twice that he could not judge the speed of automobiles generally; (3) the foundation for his statement that appellant's automobile was traveling at sixty miles an hour was his opinion that it was going at "fast speed."

We do not think that the witness was incompetent, as a matter of law, to express an opinion as to the speed of appellant's automobile because of lack of experience. He was not unfamiliar with automobiles; he had worked on them, and for several years had ridden in them extensively. He had had ample opportunity to observe moving automobiles, and to acquire sufficient knowledge to form an intelligent judgment as to their rate of speed. He was not called as an expert, but was merely a layman testifying from his everyday experience and observation. "The experience of non-expert witnesses will enable them to form a reasonably accurate judgment as to the speed of a passing machine, and nothing beyond that is expected or should be required. Of course, the value and the weight to be

given such testimony by the jury will, as in similar cases, depend upon the attention the witness has given the subject and the opportunities for observation which he may have had. His inexperience in such matters, however, goes to the weight and not to the admissibility of his testimony. The witness is competent to express an opinion as to the speed of the machine; it is for the jury to determine what weight they will give his testimony": *Dugan v. Arthurs,* 230 Pa. 299, at page 303, 79 A. 626, at page 627. See, also, *Commonwealth v. Godshalk,* 76 Pa. Superior Ct. 500, 503; *Commonwealth v. Aurick,* supra, page 193. In order for him to qualify it was not necessary that Corcoran be experienced in the actual operation of automobiles. *Muehlhof v. Reading Co.,* 309 Pa. 17, 22, 162 A. 827.

The witness, when asked whether he could judge the approximate speed of automobiles, replied in the negative; but, when asked if he could tell about how fast a vehicle was traveling, he answered in the affirmative. It is quite obvious from an examination of the witness' testimony that he may not have comprehended the meaning of the term "approximate." His testimony indicates that he thought it meant "exact." When the question was so framed that he clearly understood it, his answer as to speed was positive. His testimony cannot be construed as coming within those cases where the evidence has been rejected because no standard of measurement has been fixed. *Laubach et al. v. Colley,* 283 Pa. 366, 129 A. 88. On cross-examination he testified, as counsel for appellant points out, that appellant's automobile was "going wild," and was going at "fast speed"; but he reiterated that in his opinion appellant's automobile was going 60 miles an hour at the time.

Appellant also argues that Corcoran's testimony ought to have no weight with court or jury because it was contradicted by more imposing evidence, and cites *Knox v. Philadelphia & Reading Railway Co.,* 202 Pa.

504, 52 A. 90. This case is not controlling, as the Supreme Court there said that the witness did not show anything which would qualify him to judge the rate of speed, and in addition was contradicted by positive evidence. That is not the present case in either respect. And, of course, appellant does not argue that the rule stated in *Grimes v. Pennsylvania R. Co.*, 289 Pa. 320, 324, 137 A. 451, and *Twining v. Lehigh & New England Railroad Co.*, 310 Pa. 429, 165 A. 489, is applicable. In connection with this phase of appellant's argument, reference is made to the testimony of Sergeant John N. Thistle, a witness for the Commonwealth. This witness testified that at the scene of the accident he found two skid marks starting at a point about 11 feet north of the south curb of Rector Street, running south on Ridge Avenue for a distance of 81 feet, and that the front of appellant's automobile was turned into the west curb of Ridge Avenue. There is additional testimony that appellant's automobile went into the curb.

Thistle also testified that scientific authorities fix the braking distance for a car going 40 miles an hour as 88 feet, and for a car traveling at 60 miles an hour 198 feet. The witness was of the opinion that an automobile with locked brakes has approximately 10 per cent less braking efficiency than if the brakes are not locked. But the witness did not testify that the skidding distance which he found in this case equaled the braking distance, and thereby determined the rate at which appellant's automobile was traveling under the formula to which he testified. It was not shown to any certainty when the brakes were first applied by appellant. Besides, when appellant's automobile came in contact with the Wilson girl, who weighed 170 pounds, it threw her body into the air, and this was observed by several witnesses. The automobile was stopped against the west curb of Ridge Avenue, and this may have prevented it from continuing on its

course. There was testimony that the body was picked up beyond that point. Although appellant may have traveled only 71 feet (allowing 10 feet for length of automobile) with locked brakes, this is by no means conclusive proof under the attendant circumstances that the automobile could not have been going 60 miles an hour as Corcoran testified. Corcoran's testimony was properly admitted, and his estimate was supported in some degree by other facts that were presented to the jury.

Appellant cites *Mulheirn v. Brown et al.*, 322 Pa. 171, 185 A. 304, and *Wenhold v. O'Dea*, 338 Pa. 33, 12 A. 2d 115, as to the admissibility of Corcoran's testimony. These cases are not controlling, as they do not involve circumstances similar to those of the instant case. Corcoran had ample opportunity to observe the impact and the operation and course of appellant's automobile both before and after. It is clear from the evidence that Corcoran was standing on Ridge Avenue at a point which permitted him to observe the manner of operation of appellant's car, and to arrive at a reasonable conclusion as to its speed.

As to the second question, appellant recognizes that his complaint of the use of the word "approximate" in the charge of the court was fully argued on the first appeal to this court, and appellant's contention dismissed. The trial court followed *Commonwealth v. Gill*, 120 Pa. Superior Ct. 22, 182 A. 103, and *Commonwealth v. Matteo*, 130 Pa. Superior Ct. 524, 197 A. 787. Careless, negligent, and reckless conduct is not necessarily an unlawful act, that is, an act forbidden by law, but it may under certain circumstances approximate unlawfulness so that in the mind of the law it amounts to an unlawful act. However, death caused by, or resulting as a consequence of, recklessly driving a motor vehicle is involuntary manslaughter. *Commonwealth v. Micuso*, 273 Pa. 474, 478, 117 A. 211;

*Commonwealth v. Godshalk,* supra; *Commonwealth v. Aurick,* supra.

The assignments of error are overruled.

Judgment is affirmed, and the record is remitted to the court below, and it is ordered that the defendant appear in the court below at such time as he may there be called, and that he be by that court committed until he has complied with the sentence, or any part thereof which had not been performed at the time a supersedeas was granted pending appeal to this court.