## Demarest License

198

*Stanley G. Stroup,* for appellant.

*Ray B. Replogle* and *Frank P. Lawley, Jr.,* for Commonwealth.

SNYDER, P. J., October 21, 1955.—On September 10, 1954, at or about 6:50 p.m., Kenneth L. Demarest, of Bedford County, was arrested by an officer of the Pennsylvania State Police and charged with "driving too fast for conditions", in violation of section 1002 (*a*), art. X, of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §501. A fine and costs were paid without a hearing. Subsequently, the Secretary of Revenue suspended Demarest's driving privileges for a period of 90 days. This appeal followed.

After a hearing de novo, the court finds the following facts:

1. Petitioner, Kenneth L. Demarest, is a resident of Bedford County.

2. He is a truck driver by profession and has held a Pennsylvania operator's license for the last five years, and during that time has been operating trucks and other motor vehicles in this Commonwealth.

3. On September 10, 1954, at or about 6:50 p.m., while operating a tractor-trailer outfit, owned by E. G. Studebaker, on the Pennsylvania Turnpike, in Hopewell Township, Cumberland County, he was stopped by a member of the Pennsylvania State Police

and charged with driving too fast for conditions. He paid a fine and costs without a hearing.

4. The Pennsylvania Turnpike is a four-lane concrete highway, with two lanes east and two lanes west, separated by a medial strip.

5. At the time and place of the alleged violation, the road was dry, it was level and straight, there was no traffic on petitioner's lane of travel and it was twilight.

6. For a distance of 175 feet, petitioner drove the tractor-trailer at a speed of 70 miles per hour.

7. The speed of the vehicle was determined by radar equipment located on an overhead bridge above the turnpike, and operated by a State patrolman trained and experienced in the use thereof. The radar equipment had been tested twice earlier in the day by checking it with the speedometer reading of a patrol car which was driven at a controlled speed past the radar equipment. The speedometer of the car had been tested and approved for accuracy on the same day. The test between the radar and the speedometer showed a tolerance of two miles per hour, the speedometer showing of 70 miles per hour and the radar, 68 miles per hour.

8. The radar equipment was properly set up and tested for accuracy, it was properly operated by officers specially trained in the operation thereof, it was functioning properly at the time in question and it accurately determined the speed at which appellant was operating his vehicle at that time and place.

9. There was no recklessness and there were no aggravating circumstances on the part of appellant in the operation of his tractor-trailer.

### Discussion

Two questions have been raised by this appeal. First, is evidence of speed secured by use of radar equipment admissible for the purpose of showing that the operator

of a motor vehicle was traveling too fast for conditions then and there existing? Second, is driving in excess of the permissible maximum speed, in and of itself, a violation of section 1002(a) of The Vehicle Code?

Appellant has been charged with "driving too fast for conditions" as defined by section 1002(a) of The Vehicle Code. That subsection provides as follows:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and of any other restrictions or conditions then and there existing; and no person shall drive any vehicle, upon a highway at such a speed as to endanger the life, limb, or property of any person, nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead."

This subsection creates a complete offense separate and distinct from every other offense defined elsewhere in the act. It is obvious that speed is one of the necessary ingredients of the violation defined by this subsection. It is also apparent that this subsection (a) does not prescribe any method by which speed shall be determined. Subsection (d) of the act provides specific methods of determining speed in business or residential districts or on the open highway, and where the charge is violation of the maximum permissive speed limits, under subsections (b) or (c) of section 1002, evidence of speed secured by any other method is incompetent and inadmissible. Subsection (d)(1) provides that: "When the rate of speed of any vehicle is timed on any highway within a business or residence district, where official speed limit signs are erected, as provided in this section, for the purpose of ascertaining whether or not the operator of such vehicle is

violating a speed provision of this act, such time shall be taken by not less than two (2) peace officers, one of whom shall have been stationed at each end of a measured stretch, and no conviction shall be had upon the unsupported evidence of one (1) peace officer, except as hereinafter provided, and no such measured stretch shall be less than one-eighth (⅛) of a mile in length. Under all other conditions, the rate of speed shall be timed, for a distance of not less than one-quarter (¼) mile, by a peace officer using a motor vehicle equipped with a speedometer tested for accuracy within a period of thirty (30) days prior to the alleged violation".

Evidence of speed secured by either of the above methods would be competent and admissible to satisfy the speed requirements of subsection (a), but proof of a violation under this section is not limited to these sources of evidence. The Superior Court in the case of Commonwealth v. Klick, 164 Pa. Superior Ct. 449-52, has held that "where the charge is failure to drive a vehicle at a careful and prudent speed under existing conditions in violation of §1002(a) any competent evidence of speed is admissible".

What is competent evidence of speed in cases other than those involving violations of the maximum permissive speed limits? It was held in the case of Commonwealth v. Aurick, 138 Pa. Superior Ct. 180, that nonexpert opinion as to the speed of a vehicle is competent, that the inexperience of the witness goes to the weight and not to the admissibility of his testimony and its weight is for the jury. In this case involving a prosecution for involuntary manslaughter, a witness who had never driven an automobile but who had frequently ridden in motor vehicles was permitted to testify that in his opinion a motor vehicle was being operated at a speed of 60 miles per hour. The testi-

mony was offered to show that defendant was driving in a rash and reckless manner and without due regard to the circumstances.

In the case of Commonwealth v. Forrey, 172 Pa. Superior Ct. 65, where defendant was charged with reckless driving, a witness, over objection, was allowed to state that in his opinion defendant was driving at the rate of 25 miles per hour. The appellate court held that a nonexpert witness is competent to express an opinion as to the rate of speed of an automobile.

No one questions the competency of an intelligent person having a knowledge of time and distance to testify as to the speed of carriages, railroad trains, street cars or automobiles in negligence cases. Nothing more is required than that the evidence or testimony be such that it will enable the court or jury to form a reasonably accurate judgment as to the speed of the passing vehicle.

Truth is the ultimate goal of investigation and trial. Testimony and evidence are its source material. The legal mechanism for screening it, for determining its competency or admissibility, must be as modern as the times. It must not unduly hesitate to recognize, approve and accept the new sources or means of ascertaining the truth. As fast as the genius of man can supplant the fallible observation and recollection of mind with the far more accurate measurement and recordation of mechanical equipment, judicial inquiry should not only receive but welcome the enlightening fruits thereof. The photograph, X-ray, microscope, dictograph, phonograph, movietone and the fingerprint have been received by judicial tribunals in proof of matters depending upon evidence. The admission of evidence secured from these sources indicates the receptive attitude of the law toward any reliable mechanism produced by scientific knowledge for the discovery

or recording of facts. See Commonwealth v. Harold Roller, 100 Pa. Superior Ct. 125.

The real test and value of evidence or testimony are its accuracy and reliability. If a mechanical instrument has been properly tested for accuracy and adjusted to accuracy within the limits of the equipment, so that the degree of fallibility, if any, can be ascertained, evidence secured from the use thereof under favorable conditions and proper operation, should be far more valuable in the search for truth than the testimony of witnesses based on the power of observation and personal experience. If the testimony of witnesses who merely observed the passing of a vehicle is admissible in evidence as an aid to the court or jury in determining its speed, how much more valuable would be the evidence secured from a recording mechanism for the measurement of speed adjusted to a high degree of accuracy and properly operated.

In the instant case, radar equipment was used for the purpose of determining the speed of a tractor-trailer that was being operated on the Pennsylvania Turnpike. This equipment, which included transmitting and receiving devices as well as calibrated speedometer needle indicating speed of cars passing within range of the waves being transmitted, was located on the abutment of a bridge over the turnpike. It had been tested for accuracy twice during the day in question. It was first tested at 4:45 p.m. of that day and again at 6 p.m. In each test, a regular patrol car, the speedometer of which had previously during the day been tested and adjusted for accuracy, was driven past the radar equipment at a speed of 70 miles per hour according to the reading of the speedometer. On each test, the radar equipment registered the speed of the patrol car at 68 miles per hour. The radar equipment and the patrol car were operated by members of the

Pennsylvania State Police who had been ʼspecially trained in setting up and operating radar equipment.

One of the officers was operating the equipment at the time appellant's tractor-trailer passed under the bridge on which it was located. He testified that the radar equipment registered the speed of the vehicle as it was going away at 70 miles per hour. Subsequent testimony of the Commonwealth clearly indicated that the radar equipment was limited in determining the speed of vehicles, either approaching the machine or leaving it to a maximum distance of 175 feet. The officer operating the instrument upon noting the speed of appellant's tractor, immediately contacted by phone the second officer who was waiting in a patrol car parked at the side of the highway 1,000 feet distant from said bridge and within clear view thereof. He described appellant's tractor-trailer, advised him of its speed and requested that the driver be apprehended. The second officer stopped appellant and informed him of the violation.

The court received the testimony of Nelson K. Stover, a licensed radar engineer of many years of experience in the electronics field, who explained in some detail the manner in which radar equipment of the kind used by the Commonwealth in this case, operated in measuring the speed of vehicles and the extreme accuracy of such equipment. He further stated that all radar units are licensed by the Federal Communications Commission, and it is required that all units must be maintained, adjusted and certified by a qualified and licensed engineer. All radar machines, such as used in the present case, are tested and adjusted to accuracy according to standards set by the National Bureau of Standards and that the degree of accuracy is all but absolute. He further stated that he had tested this particular radar equipment on June 21, 1954, and that it was accurate at that time.

In addition to this testimony, the court availed himself of an opportunity to observe the operation of this equipment under controlled conditions on the highway and was very favorably impressed by its obvious accuracy in determining speed. Our conclusion is that the evidence of speed secured by the use of radar equipment, tested, adjusted and operated as we have found it to be in this case is highly competent and admissible. The officers, themselves, by our rules of evidence were competent to testify as to the speed of appellant without reference to the use of radar equipment for the purposes of this case. How much more valuable and weighty and, therefore, desirable is the evidence of speed secured by a mechanism of almost perfect accuracy.

The exact problem presented here is without judicial precedent in any of the courts of this State. The laws relative to prosecutions for speeding must be strictly construed and since they distinctly specify the manner in which speed may be determined, no other method may be used regardless of its accuracy. Those laws limit the instruments to be used for determining speed in such prosecutions to speedometers and stop-watches. Consequently, the use of radar for such purpose is wholly dependent upon legislative enactment and not upon judicial interpretation. This would explain the fact that law enforcement agencies of this State have lagged somewhat behind some of our neighboring States in introducing radar equipment for the purpose of checking speeding on our highways. Some of those States whose traffic laws allow far more flexibility have been using radar equipment to determine speed generally for quite some time, and the courts of those States have taken either judicial notice of the general recognition of the accuracy and value of evidence of speed secured by radar where obtained under proper circumstances, or have received such evidence where

authenticated by expert testimony. See State v. Dantonio, 31 N. J. Superior 105; State v. Moffitt, 100 A. 2d 778, (Superior Ct. Del., 1953) ; People v. Offerman, 204 Misc. 769, 125 N. Y. S. 2d 179 (Supreme Ct., 1953) ; People v. Beck, 205 Misc. 757, 130 N. Y. S. 2d 354 (Supreme Ct., 1954). For the above reasons, the court is satisfied that the evidence of speed secured by radar equipment was competent and admissible in this case.

Having found that the Commonwealth has established by legally competent evidence that appellant operated a tractor-trailer unit at a speed of 70 miles per hour for a distance of 175 feet in a zone where the maximum lawful speed of that type of vehicle is restricted to 50 miles per hour, we come to the second question involved in the case: Is driving in excess of the permissible maximum speed, in and of itself, a violation of section 1002(a) of The Vehicle Code? Unfortunately, the Commonwealth has not seen fit to honor us with a written brief, although a request for an opportunity to do so has held up our decision for quite some time. However, counsel argued at the time of taking testimony "that speed beyond the prohibited limitation is a prima facie negligent act" and, therefore, inferred that it constituted a violation of the section in question. He cited Wagner Appeal, 42 Berks 101, in support of his contention. We are not in accord with that contention and after an examination of that case, we are satisfied that it does not support it.

The Wagner case involved an appeal from a suspension of driving privileges based on speeding. Judge Mays, of Berks County, in his opinion at page 103, stated: "The special speed limitations quotations above referred to are subject to the general rule that if the speed is beyond the prohibited limitation, it is prima facie a negligent act (See Landis, Admrx. v. Conestoga Transportation Co. et al., 349 Pa. 97). . . ."

However, it is interesting to note that he concluded the statement by saying, "but whether it is negligence or not depends upon conditions then existing. The question is one ordinarily for a jury or a judge when he must find the facts, and in either case, speed limit is not a strict rule of law but is flexible to yield to the circumstances of each case. When the circumstances are shown, the question is one for inference either by the jury or the trial judge."

It is unquestionably the law in Pennsylvania that the violation of a mandatory law regulating speeding is negligence per se: Jinks et al. v. Currie, 324 Pa. 532; Ashworth v. Hannum et al., 347 Pa. 393; Gaskill et al. v. Melella, 144 Pa. Superior Ct. 78. However, negligence does not constitute a violation of The Vehicle Code, and it is not an ingredient of section 1002(a). Furthermore, exceeding the maximum speed limits is not per se "driving too fast for conditions".

It was held in Commonwealth v. Klick, supra, that "subsection (a) of 1002 of the Act creates a complete offense separate and distinct from every other offense defined elsewhere in the Act. Official signs as to permissible maximum speed cannot relieve one from a violation of 1002 (a) merely by driving within the speed limit prescribed. While care and prudence may indicate a rate of speed much less than the maximum limit, as indicated by official signs, conceivably one may drive so slowly under certain conditions as to jeopardize others by his disregard for their safety; *on the other hand one may exceed permissible maximum speed limits on occasion, in the operation of a motor vehicle and still not be chargeable with violation of 1002(a)*. . . . What is reckless driving or what is failure to drive at a careful and prudent speed depends upon the particular circumstances. As in the case of reckless driving, the determination of what constitutes driving 'too fast for conditions' is for the

finder of the facts, in this case a judge of the court below, in a summary proceeding". (Italics supplied.)

The case of Commonwealth v. Emrick, 83 D. & C. 293, presents a situation similar to the present one. The operator's license had been suspended for driving too fast for conditions. An appeal followed and at the hearing the Commonwealth showed that the operator had exceeded the maximum speed limit but failed to produce any evidence that he was driving without due regard to the traffic, surface and width of the highway. Judge Troutman sustained the appeal on the ground that, in addition to speed, it was incumbent upon the Commonwealth to show that the operator drove his automobile without regard to the traffic, surface and width of the highway and of any other restrictions or conditions then and there existing.

In our case, the Commonwealth made no attempt to show the existence of any unfavorable or dangerous conditions at the time and place of the alleged violation. In fact, we need look no further than the testimony of its witnesses to find that the turnpike is a well-constructed concrete road, with two lanes of travel east and two lanes west, separated by a medial strip of several feet; the road was straight and nearly level; it was dry and the weather was clear; darkness had not yet fallen; there was no traffic at, near or even in sight for a distance of over 1,000 feet. It must be kept in mind that the alleged violation took place, if at all, in the short space of 175 feet. There was no evidence of speed beyond that distance. There was no evidence that the driver could not have brought his vehicle to a stop within the assured clear distance ahead. We look in vain for evidence of any condition or circumstance which, coupled with excessive maximum speed, would establish a violation of this section of The Vehicle Code. We, therefore, find that appellant was not

guilty of violating section 1002(a) of the code, and his license should not have been suspended on the ground that he was driving too fast for conditions.

Hence the following order:

And now, October 21, 1955, after hearing de novo, it is the judgment of the court that under the evidence submitted, this petitioner's license should not be suspended. Wherefore, the decision of the Department of Revenue is reversed and the appeal is sustained.