Melvin SNYDER, Plaintiff,

v.

Frank A. MACALUSO and Phillip G. Macaluso, individually and doing business as A. Macaluso Fruit Company, a partnership; and Indiana Refrigerator Lines, Inc., a corporation, Defendants.

Civ. A. No. 17740.

United States District Court
W. D. Pennsylvania.

May 2, 1962.

John E. Evans, Jr., of Evans, Ivory, & Evans, Pittsburgh, Pa., for plaintiff.

David B. Fawcett, Jr., of Dickie, Mc-Camey, Chilcote & Robinson, Pittsburgh, Pa., for defendant Macaluso.

Fred Egler, of Reed & Egler, Pittsburgh, Pa., for defendant, Indiana Refrigerator Lines, Inc.

MARSH, District Judge.

In this diversity action the jury returned a verdict in favor of the defendants. Plaintiff moved for a new trial assigning the following grounds: [1]

"1. The verdict was against the weight of the evidence.

"2. The verdict was contrary to law.

"3. The Court erred in failing to instruct the jury as to the Code of Federal Regulations insofar as it limited defendants' truck driver to an aggregate of ten hours of driving in any twenty-four hour period.

"4. The Court erred in failing to instruct the jury as to defendants' liability if the truck driver, Scott, had operated the tractor-trailer for over ten hours in the aggregate without an eight-hour rest, at the time of the collision.

"5. The Court invaded the province of the jury in its instructions as to the lack of evidence to support a finding that the driver, Scott, was an employee of A. Macaluso Fruit Company, and that he was acting in the course of his said employment.

"6. The Court failed to instruct the jury that the defendant, Indiana Refrigerator Lines, Inc., was liable as a matter of law for any negligence of the truck driver, Scott.

"7. The Court erred in failing to explain to the jury the acts of the two truck drivers, namely, of Scott and Snyder, which would have constituted negligence or contributory negligence."

In my opinion the motion should be denied.

It was stipulated that the collision out of which this action arose occurred on January 26, 1958, at about 10:30 P.M., on the Pennsylvania Turnpike in West Pennsboro Township, Cumberland County, Pennsylvania.

Plaintiff's home was in Everett, Pennsylvania, about 8 miles from the Breezewood entrance to the Turnpike. The accident happened about 65 miles east of the Breezewood entrance.

It was stipulated that "a collision occurred between the front end of the tractor-trailer outfit being operated by the plaintiff Snyder, and the rear of the tractor-trailer outfit being operated by Mr. Scott."

▋ The plaintiff testified that the range of his headlights on the straight stretch of the Pennsylvania Turnpike was 100 feet, but he failed to see a large, unlighted tractor-trailer slowly pulling onto the Turnpike until he was 50 feet away (T., pp. 13–14). The left side of the trailer was on the concrete (T., pp. 54–55). Plaintiff's version of the accident fully warranted the jury in finding that he was guilty of contributory negligence.

1. Grounds 2, 5, 6, and 7 have not been briefed or argued and they are clearly without merit.

In somewhat similar cases contributory negligence was found as a matter of law.[2]

As foretold by the pleadings and pre-trial proceedings, plaintiff contended that the cause of the rear-end collision and his injuries was that Scott negligently drove his vehicle without lights from the berm into the southernmost lane in front of him. This was the principal factual issue on liability litigated by plaintiff at the trial. Defendants contended that the plaintiff negligently ran into the rear of their fully-lighted vehicle as it preceded him in that lane.

The night was dark and dry. Plaintiff testified that no obstruction obscured his view (T., p. 51); that he could see ahead 100 feet (T., pp. 13–14, 46); that red reflectors were standard on over-the-road trailers[3] (T., p. 48); that Scott's trailer, without lights, was 50 feet in front of him before he saw it (T., p. 13); that it was then easing onto the concrete portion of the Turnpike from the berm (T., pp. 54–60); that the left side of the trailer had not reached the middle of the southernmost lane (T., pp. 55–56); and that its speed was 10 miles per hour (T., p. 16).

An interrogatory asking the distance between the two vehicles when plaintiff first observed the defendants' trailer was answered by him as follows:

"I am unable to state the exact distance between my vehicle and the defendants' when I first saw it. However, only a few seconds elapsed between the time when I first saw defendants' vehicle and the occurrence of the accident." (T., pp. 49–50).

He testified that his speed was 45 miles per hour (T., pp. 14, 50, 76). Plaintiff's

evidence justified a finding that he was guilty of contributory negligence in failing to pay proper attention to the road ahead and in failing to have his vehicle under such control that he could stop within the range of his headlights (T., pp. 53–54). 75 Purdon's Pa.Stat.Ann. § 501; Gaber v. Weinberg, 324 Pa. 385, 188 A. 187 (1936). The defendant in Makowsky v. Povlick, 262 F.2d 13 (3d Cir. 1959), was granted a directed verdict on weaker facts than these.

Under the evidence submitted by defendants, the jury could have found that Scott did not pull off the highway onto the berm at any time (T., p. 195). Scott testified that he was driving eastwardly on the southernmost lane of the Turnpike at a speed of about 40 to 45 miles per hour (T., p. 191) with all his lights on (T., pp. 195, 244–248, 254–256); that he observed the headlights of plaintiff's vehicle approaching from the rear (T., p. 192); that plaintiff ran into the center of the back of his trailer causing only $500.00 damages (T., pp. 196–198, 277); that he stopped 300 or 400 feet eastwardly from the point of impact (T., p. 238). The State Policeman said Scott stopped 500 feet eastwardly from the point of impact (T., pp. 254, 274). Such evidence tends to contradict plaintiff's testimony that Scott was pulling onto the highway at 10 miles per hour when he ran into the rear of Scott's trailer (T., p. 16).

Plaintiff's witness King was impeached in several important respects. King testified that following the collision, plaintiff's tractor-trailer ran through the guardrails on the south side of the Turnpike (T., pp. 80, 82, 84). The State Policeman testified there were no guard-

2. A directed verdict was sustained in Makowsky v. Povlick, 262 F.2d 13 (3d Cir. 1959), where defendant's driver drove onto a through highway without lights. A compulsory non-suit was sustained in Griffith v. Weiner, 373 Pa. 184, 95 A.2d 517 (1953), where on a clear night the plaintiff drove his automobile into the rear of a trailer which was parked at the right edge of a 4-lane highway; and a compulsory non-suit was sustained in

Gaber v. Weinberg, 324 Pa. 385, 188 A. 187, 188 (1936), where plaintiff having a straight range of vision for 75 feet was unable to stop within the range of his headlights and collided with an unlighted overturned truck.

3. See: Title 49 C.F.R. §§ 193.14, 193.15; 75 Purdon's Pa.Stat.Ann. § 351(e) (1953), requiring a red reflector on the rear of trailers.

rails in the vicinity of the accident, i. e., Mile Post 217.5 (T., p. 270).

King testified that Scott stopped immediately upon impact (T., p. 106); whereas, the testimony of Scott and the State Policeman was to the effect that he stopped 300 to 500 feet eastwardly of that point.

The plaintiff and the witness King both lived in Everett, Pennsylvania. On direct examination King testified that he did not talk with the plaintiff after the accident (T., p. 89). On cross-examination, he admitted that plaintiff had come to his home after the accident and that he had talked to him at Union Hall (T., p. 93).

A statement King had signed indicated that he had seen an accident on the Pennsylvania Turnpike at about 1:00 A.M.; whereas, the accident in litigation occurred at about 10:30 P.M., approximately 73 miles east of Everett.

King testified that he left Everett for Fort Monmouth at 8:45 P.M. (T., pp. 114, 132). Everett is only 8 miles from the Breezewood entrance of the Turnpike, and the plaintiff entered the Turnpike at 9:33 P.M. (T., p. 263). Because it could be inferred from King's testimony that he was preceding plaintiff on the Turnpike, the jury could have found that his testimony regarding the accident was incredible.

The jury asked questions which indicated that King's credibility was causing difficulty (T., p. 360).

█ A new trial should not ordinarily be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the jury might have found for either party. Lind v. Schenley Industries, Inc., 278 F.2d 79, 91 (3d Cir. 1960); Decker v. Kulesza, 369 Pa. 259, 85 A.2d 413 (1952); Carroll v. City of Pittsburgh, 368 Pa. 436, 84 A.2d 505, 509 (1951); Dean v. Trembley, 185 Pa.Super. 50, 137 A.2d 880, 885–886 (1958). In my opinion the weight of the evidence was very much in accord with the verdict of the jury on the issue of contributory negligence.

Plaintiff did not submit any written requests for charge when the testimony was closed (T., p. 280). Rule 51, Fed.R. Civ.P. 28 U.S.C.A.[4]

After the lawyer for Macaluso Brothers had completed his summation (T., p. 281), seemingly as an afterthought, plaintiff's counsel said he would like to call the court's attention to § 195.4 Code of Federal Regulations. This regulation proscribes driving for more than 10 hours in the aggregate in any period of 24 consecutive hours, unless the driver be off duty for 8 consecutive hours. The evidence showed that Scott had violated it.[5]

I could not see any causal connection between the violation and the accident, for under all the evidence plaintiff had collided with the rear of Scott's trailer. At no time had plaintiff's theory of causation included the violation of this regulation. However, the substance of the regulation had been introduced into evidence on Scott's cross-examination, without objection, and plaintiff's counsel in his argument had called the violation to the attention of the jury. But the tenor

4. Rule 51 reads as follows:
   "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their argument to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

5. Scott said he left Columbus on January 26, 1958, at 1:30 A.M., stopped twice for an aggregate of 2½ hours before arriving at Mary's Truck Stop near Irwin, Pennsylvania, slept there for about 5 hours, got on the Turnpike at the Irwin Interchange at 4:52 P.M., and stopped again at Midway for 1½ hours; the accident occurred at about 10:30 P.M. (T., pp. 227–236, 264).

of counsel's argument was that plaintiff was a careful driver because he complied with the regulation, and that Scott was a careless driver because he did not comply with it (T., pp. 301–303). He did not argue to the jury that the alleged violation was a cause of the accident. In his complaint, amended complaints, pretrial statement, and at trial, plaintiff had strenuously contended that the negligence which caused the accident was that Scott had driven his tractor-trailer, without lights, partially onto the highway in front of plaintiff's outfit. The testimony adduced to sustain that contention constituted the critical evidence of causation in the case. There was never any contention at pretrial or trial that the violation of the regulation was a causative factor. Cf. Smith v. Ellerman Lines, 247 F.2d 761, 766 (3d Cir. 1958).[6]

■ " '[T]he general principle is that the violation of a statute will not create a liability unless it is the efficient cause of the injury.' " Byrne v. Matczak, 254 F.2d 525, 528, 77 A.L.R.2d 1077 (3d Cir. 1958); see also, Stubbs v. Edwards, 260 Pa. 75, 103 A. 511, 512 (1918); Miller v. Gutherie, 325 Pa. 495, 191 A. 61 (1937).

■ In view of plaintiff's argument and my previously-expressed opinion that the violation had not been shown to be a causative factor (with which I thought plaintiff's counsel had agreed T., p. 284), I did not mention the regulation in the charge. When I inquired if anything had been omitted, plaintiff's counsel stated that he had no exception to the charge (T., p. 359). See Rule 51, quoted in f. n. 4.

Even if it were error not to mention the regulation to the jury, it is my opinion in view of the foregoing considerations that the plaintiff suffered no substantial prejudice which would warrant a new trial. Rule 61, Fed.R.Civ.P.

An appropriate order denying the motion for a new trial will be entered.

---

6. In Montgomery v. Virginia Stage Lines, 89 U.S.App.D.C. 213, 191 F.2d 770 (1951), relied on by plaintiff, the regulation involved dealt with the "critical aspect" of that case, and the duty imposed by the regulation was the "central one".