## Commonwealth ex rel. v. Day

*Samuel Dash* and *Malcolm W. Berkowitz*, for Commonwealth.

*Albert Konefsky*, for petitioner.

CRUMLISH, J., August 23, 1955.—Relator has filed this writ of habeas corpus alleging that he is confined and detained unlawfully in the State penitentiary for the reason that the act of assembly does not define the crime of incestuous adultery, for which crime he was sentenced.

By answer, the district attorney denies relator is being detained unlawfully, and further denies that the act of assembly has not defined incestuous adultery.

The answer of Charles G. Day, warden of State Penitentiary, sets forth that the relator was sentenced on two bills, July term 1939, to a term of 5 to 10 years on each bill, to run consecutively, making a total of 10 to 20 years to be computed from July 14, 1939, after pleading guilty as charged. He was paroled on July 14, 1949. The balance of his sentence when paroled was 10 years. On May 12, 1952, he was re-

turned to prison as a convicted parole violator with a new consecutive commitment, bill no. 1130, April term 1952, incestuous adultery, 2 to 5 years in the Eastern State Penitentiary. The effective date of return from parole was May 12, 1952, making his new maximum expire May 12, 1962.

Relator was convicted of incestuous adultery for having intercourse with his stepdaughter.

The act of assembly under which he was prosecuted is The Penal Code of 1939, the Act of June 24, 1939, P. L. 872, 18 PS §4101 et seq. It reads as follows:

"Incest. Whoever commits incestuous fornication, or incestuous adultery, or inter-marries within the degrees of consanguinity or affinity, according to the following table, is guilty of incest, a felony, and shall on conviction, be sentenced to pay a fine not exceeding two thousand dollars ($2,000), or to undergo imprisonment, by separate or solitary confinement at labor, not exceeding five (5) years, or both.

"All such marriages are hereby declared void:

"The table of degrees of consanguinity and affinity is as follows: . . ."

Relator raises an interesting question of the scope of the table of degrees of consanguinity and affinity in the act. Does the table encompass the whole section and, therefore, relate to fornication, adultery and intermarriage? Or, is the table limited in scope to the one provision concerning intermarriage within the degrees set forth? The latter construction is urged by the relator, under the well-established rule that a penal statute must be construed strictly, and all doubts resolved in favor of the accused: Commonwealth v. Exler, 243 Pa. 155, 163 (1914). If we find merit to relator's contention, then there is an insufficient definition of incestuous adultery under The Penal Code, and relator's prayer should be granted.

That incest was not a crime at common law is abundantly clear from a review of the authorities. In England, prior to 1908, except in the time of the Commonwealth when it was a capital offense: State v. Kessler, 78 N. C. 469; it was an ecclesiastical offense punishable by excommunication and penance, which jurisdiction was rarely invoked.

In America, as early as 1695, the Massachusetts Bay Province enacted a law, detailed in its provisions, entitled, "an act to prevent incestuous marriages". Section 1 of the act, found in chapter 2 of the Massachusetts Bay Province Laws of 1695-96, set forth the degrees of kindred forbidden marriages. Section 2 thereof set forth provisions for penalties for "every man and woman who shall marry or carnally know each other, being within any of the degrees before recited . . .".

Our Commonwealth enacted a shorter law, The Act of 1705, 1 Sm. L. 26, entitled, "An ACT against incest." It reads as follows:

"FOR the preventing of incestuous marriages within this province, Be it enacted, That all marriages hereafter made, being within the degrees of consanguinity or affinity according to the following table, are hereby declared to be void, to all intents and purposes, and it shall and may be lawful for the Governor for the time being to grant a divorce from the bonds of matrimony, and the parties shall be fined to the value of one third part of their estates.

"II. And if any person or persons shall be convicted of incestuous fornication or adultery, he, she or they, so convicted, shall suffer such punishments as are by law against fornication and adultery, and be fined to the value of one third part of their estates, to be paid to the Proprietary and Governor, for the time being, for the support of government, and defraying the contingent charges thereof.

"The TABLE of Degrees of CONSANGUINITY and AFFINITY is as follows: . . ."

The Act of 1705, supra, was specifically repealed by the Act of March 31, 1860, P. L. 427, sec. 79. The pertinent section of the Act of 1860, sec. 39, reads as follows:

"If any person shall commit incestuous fornication, or adultery, or intermarry within the degrees of consanguinity or affinity, according to the following table (established by law), he or she shall, on conviction, be sentenced to pay a fine. . . ."

A comparison of the Act of 1860 with the later Act of 1939, supra, shows a marked similarity in the wording. In separate sections of each of these acts, the crime of adultery is clearly defined.

We turn then to relator's position.

We are well aware of the requirement of strict construction of penal acts as is set forth in Commonwealth v. Exler, supra. In our opinion, in the instant case it is not necessary to ascertain the legislative purpose by implication, or by resorting to artificial aids of construction.

However, the answer to relator's ingenious argument may be found in the words of Justice Holmes in Roschen v. Ward, Attorney General of New York, et al.; S. S. Kresge Company v. Same, 279 U. S. 337 (1929), wherein he stated: "We agree to all the generalities about not supplying criminal laws with what they omit, but there is no canon against using common sense in construing laws as saying what they obviously mean."

The latest Pennsylvania guidepost for the interpretation of penal statues is found in Commonwealth v. Paul, Appellant, 177 Pa. Superior Ct. 289, 292-93 (1955). Judge Ross therein stated:

"Penal statues must be strictly construed but construed with common sense. It must be presumed that

the legislature did not intend a result that is absurd, impossible of execution or unreasonable."

Incest may not have been a common-law crime, but the term, "incest", has carried with it a meaning well known and recognized from the days of antiquity.

In the United States incest is a statutory crime. The object of the statutes is to prohibit sexual intercourse between those related within the prescribed degrees.

It may be defined under the various statutes as the intermarriage, or *sexual relations without marriage*, between a man and a woman related to each other in any of the degrees of consanguinity or affinity within which marriage is prohibited: 42 C. J. S. 503.

The gravamen of the crime is the unlawful carnal knowledge, and it is unlawful because of the relationship of the parties. Furthermore, it has always been understood that the relationship of the parties determined the designation of the offense.

In Pennsylvania, in 1851, Chief Justice Black, in Dinkey v. Commonwealth, 17 Pa. 126, at page 129, observed:

"Illicit carnal connexion is called by different names, according to the circumstances which attend it. Unaccompanied with any facts which tend to aggravate it, it is simple fornication. When it causes the birth of an illegitimate child, it is fornication and bastardy. Where the man who commits it, is married, it is adultery. When the parties by whom it is done are related to one another within certain degrees of consanguinity or affinity, it becomes incest. . . . But the body of all these offences is the illicit connexion. . . ."

In Commonwealth v. Bell, 166 Pa. 405 (1895), the indictment described the crime committed as incestuous fornication and the conviction was upheld.

In Commonwealth v. Bruce, 4 Clark 14, 6 Pa. L. J. 236, it was held that a man having illicit intercourse with his daughter was guilty of incestuous fornication under the Act of 1705. In Commonwealth v. Reigel, 22 Dist. R. 903 (1913), it was held that defendant, who had had intercourse with a half-sister of his father, was guilty of incestuous fornication. In Commonwealth v. Jenkins, 46 D. & C. 677 (1942), the indictment designated the crime as incestuous rape, defendant being the father of prosecutrix.

Finally, the crime of adultery is clearly set forth in section 505 of the Act of 1939, supra: "Whoever, being married, has carnal connection with another person of the opposite sex, not his lawful spouse, is guilty of adultery, a misdemeanor . . ." and, the rule is well established that when a word or phrase is used in one section of an act and its meaning is clear, it will be construed to mean the same thing in another section of the act. Commonwealth v. Maloney, 365 Pa. 1 (1950). Thus we have no difficulty defining adultery when it appears again in section 507 which we are here considering.

Were we to uphold relator's argument, the result would be an unreasonable interpretation of the obvious intent of the legislature.

From close analysis of the three acts, supra, dealing with incest as a criminal offense, we are satisfied that the position of the table of degrees of consanguinity and affinity was not intended to have a limited application, but on the contrary it was intended that said table would be equally applicable to the entire section of each act dealing with the crime of incest, and was meant to embrace incestuous fornication, incestuous adultery and incestuous marriages.

Wherefore, we conclude that the crime of incestuous adultery is sufficiently defined under the statute, and

relator's indictment and subsequent conviction there-under was valid and his confinement is lawful.

Relator's petition for writ of habeas corpus is denied.