## Commonwealth v. Zack

*Robert B. Sacavage, Allen Neyhard* and *Anthony J. Rosini,* for the Commonwealth.

*Barry F. Feudale* and *Vincent V. Rovito, Jr.,* for defendant.

KREHEL, *P.J.,* January 4, 1985—

## I(A): REASONING

At the opening of the pre-sentence hearing on November 9, 1984, attention was focused on looking at the totality of circumstances of this case. That meant not only the happenings of the accident with its consequences of death, injuries, and immediate impact on victims, the police investigators, and medical reports, but also the pre-sentence investigation report, testimony, and exhibits of the pre-sentence hearing, legal memoranda, and the media reports, letters to the court, as well as personal, and phone calls during the ten day period following the November 9, 1984 hearing.

This commentary prior to the imposition of sentence will consist of findings of fact, the applicable law, a discussion of the application of law to the facts, and the conclusion drawn from the discussion, in a broadened form of reasons of the sentence.

The purpose of the pre-sentence hearing was to examine a judge's power and authority to suspend a sentence mandated by the Pennsylvania General Assembly, and signed into law by the governor; more particularly, section 3735 of the January 14, 1983 Vehicle Code providing a new crime of homicide by vehicle while driving under the influence, a felony of the third degree, with a mandatory minimum term of imprisonment of three years, where one unintentionally causes the death of another as a direct result of a violation and conviction for violation of DUI. A plea of guilty to violation of section 3735, knowingly, voluntarily, and intelligently, is equivalent to conviction by a jury verdict.

## I(B): CONSEQUENCES OF VIOLATIONS

Suspending a sentence is like a reprieve, and not a final sentence. For if I suspend the mandatory time of imprisonment, coupled with conditions in the nature of probation or trusting behavior, then the violation of any conditions will bring down the consequences of the final sentence: that is, the evaporation of the reprieve, and the clanging down of the slammer for the full three-year mandatory minimum term, without credit for street time. To do less, would mock the legislative enactment of fixing three years imprisonment, not one more, nor one less.

Finally, in making this difficult sentencing decision, I must be mindful of the direction of Canon 3A(1) of the Code of Judicial Conduct, which states:

"A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism."

Upon consideration of the aforegoing commentary of introduction, this court determines the following

## II: FINDINGS OF FACT

1. Craig J. Zack, a white male, born September 1, 1965, resides at 1321 West Montgomery Street, Shamokin, Northumberland County, Pa., and entered a guilty plea on May 9, 1984, to six counts: (1) Homicide by Vehicle while DUI $(F_3)$; (2) DUI $(M_2)$; (3) Driving on the Right Side of Roadway (S); (4) Reckless Driving (S); (5) Involuntary Manslaughter $(M_1)$; and (6) Underage Drinking (S).

2. The motor vehicle accident of January 20, 1984, on Burnside Road, Route 125, near Shamokin, Northumberland County, caused the death of defendant's cousin, Jan R. Diorio, Jr., passenger in the vehicle operated by defendant, and injured Robert Kern, Jr., passenger in the other vehicle.

3. Coal Township Patrolman Henry Schrader, the investigating and prosecuting officer, filed the charges enumerated in Paragraph One, and recommended a sentence of less than six months imprisonment, plus other community service conditions, when interviewed by the country parole and probation department for its pre-sentence investigation report.

4. At the pre-sentencing hearing on November 9, 1984, the following persons appeared and offered statements and recommendations:

"(a) Attorney Charles Saylor, on behalf of Robert Kern, Jr. (walking with a cane and with a brace on his injured leg), stated that this young man's life has been permanently affected and that substantial confinement is appropriate punishment, urged that

the Legislative mandate of three (3) years imprisonment be imposed;

(b) The Diorio Family's statement, read to the Court by Attorney Guy Schlesinger, said that the mandatory Sentence is not appropriate, despite the death of their son, Jan, Jr., cousin of the Defendant, claiming that nothing can be done to bring back their Son, and that three years imprisonment for the Defendant would "cause another death";

(c) Clinical psychologist, J. R. Shenk, stated that he performed an evaluation of the Defendant, reported that the youth has high intelligence, an engineering student at Penn State, is honest, emotionally stable, is an appropriate candidate and minimum risk for parole or probation, but depressed over the accident that killed his cousin, Jan Diorio, Jr., who was also his best friend;

(d) Mrs. Anita Shaffer, teacher and class advisor in Shamokin Area School District, testified in praiseworthy terms regarding the Defendant's character, academic achievement, including Class of 1983 presidency, as well as personal and family reactions.

(e) Hope Emerick, representing MADD (Mothers Against Drunk Driving), stated that this case, although unique in this County, is another statistic nationally, whereas 45,000 persons are killed annually: "because of that the Pennsylvania Legislation provided a minimum sentence" (the three years imprisonment herein).

(f) Defense Counsel, Chief Public Defender Barry Feudale, undergirds his statement with a research Memo, by stating that the Legislative intent on absolute adherence to mandatory sentences omitted any prohibition to suspending in this enactment, and that the Governor's remarks at the time

of signing suggested judicial discretion on appropriate alternatives. He suggested a sentence of public service, such as talks to student groups on the problem of drinking, or *in lieu* of that, "a short incarceration," pointing out the Defendant's suffering and future suffering because he, too, lost a loved one in the accident.

(g) Attorney Vincent Rovito, Co-Defense Counsel, who personally lost his Mother and Sister as victims of a two-car drunk driving accident more than a decade ago, stated that the Defendant will "suffer for the rest of his life in a way that no jail or incarceration can equal." Attorney Rovito added that he believes the Sentencing Judge has the power to suspend the mandatory three-year term and to impose an appropriate one.

(h) State Senator Edward W. Helfrick, one of the sponsors of this "drunk driving" legislation volunteered testimony of the Legislative's intent "not to put every drunk driver in prison, but rather to get them off the roads." He offered, further, that Legislative intent was to be ambiguous on prohibiting suspension on mandatory sentencing in this instance, allowing for Judicial discretion, and as noncommittal personally in the present case.

(i) Reference was made by the Sentencing Judge in his 1981 book, "Spiritual Fingerprint" at pages 78 and 79, wherein the 1959 alcohol problem was overcome by personal rehabilitative effort based in religious motivation, as an understanding of the impact of alcohol abuse on individual and family lives. Of particular emphasis was nearly similar case prior to present legislation wherein the Defendant was ORDERED 480 hours of community service in a hospital emergency room, *in lieu* of imprisonment, was hired by the hospital, and later entered training as licensed male nurse."

## III: APPLICABLE LAW

Section 3735(a) of the Vehicle Code provides: "Homicide by vehicle while driving under influence

(a) Offense defined. — Any person who intentionally causes the death of another person as the direct result of a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3731 is guilty of a felony of the third degree when the violation is the cause of death and the sentencing court shall order the person to serve a minimum term of imprisonment of not less than three years." 75 Pa. C.S. §3735(a).

The question presented is whether the sentencing judge may suspend the mandatory three-year sentence provided in this section.

"There is no doubt but that at common law courts . . . had the power to . . . suspend sentences; such power is inherent in the courts." Commonwealth ex rel. McGinnis v. Ashe, 330 Pa. 289, 291, 199 Atl. 185, 186 (1938). The power to suspend sentences was also noted in Commonwealth v. Nuber, 6 Pa. Super. 420 (1898), where the Court stated that suspension was "the almost universal practice in this commonwealth . . . where considerations of public policy may and ought to induce the court to stay its hand." 6 Pa. Super. at 427.

That this power to suspend sentences still exists is recognized in Commonwealth v. Middleton, 242 Pa. Super. 421, 364 A.2d 342 (1976), and Commonwealth v. Cole, 222 Pa. Super. 229, 244 A.2d 824 (1972). In Commonwealth v. Brown, 290 Pa. Super. 448, 434 A.2d 838 (1981), the Superior Court indicated that suspended sentences shall have a role to play under our current Sentencing Code, 42 Pa. C.S. §§9701 et seq.

In Ashe, supra, the Supreme Court, per Justice Maxey, stated that this power could not be taken away "except by express and unequivocal statutory enactment." 330 Pa. at 291, 199 A.2d at 186. See also, Commonwealth v. Harris, 180 Pa. Super. 323, 119 A.2d 862 (1956); Commonwealth ex rel. Hill v. Burke, 165 Pa. Super. 583, 69 A.2d 169 (1949).

In the current sentencing code, there were several 1982 amendments which clearly prohibited the sentencing judge from suspending sentence. These amendments are: 42 Pa. C.S. §9712 — certain offenses committed with firearms; 42 Pa. C.S. §9713 — certain offenses committed on public transportation; 42 Pa. C.S. §9714 — certain repeat offenses; and 42 Pa. C.S. §9715 — life imprisonment for homicide. A reasonable interpretation is that since the general assembly, in March, 1982, was aware that it had the ability to specifically prohibit the suspension of sentences, yet, later in 1982, failed to prohibit sentence suspension when enacting 75 Pa. C.S. §3735, the general assembly did not intend to prohibit the suspension of sentence under this section of the Vehicle Code.

Governor Thornburgh recognized this when, in his remarks at the December 15, 1982 signing of the bill which contained section 3735 and other mandatory sentencing sections of the Vehicle Code, he stated,

"Further, the bill contains no language which expressly prohibits a judge from suspending a sentence . . . as an alternative to imprisonment." Pg. 3, Remarks of Governor Richard Thornburgh on December 15, 1982.

A review of the Statutory Construction Act, 1 Pa. C.S. §1501 et seq., is instructive. 1 Pa. C.S. §1928(b) provides that penal provisions shall be strictly construed. When a criminal statute calls for

construction, "it is not the construction that is supported by the greater reason that is to prevail but that one which, if reasonable, operates in favor of life and liberty." Commonwealth v. Exler, 243 Pa. 155, 162, 89 Atl. 968, 971 (1914). See also, Commonwealth v. Glover, 397 Pa. 543, 156 A.2d 114 (1959); Commonwealth v. Standard Oil Company, 101 Pa. 119 (1882). In this case, the construction which operates in favor of liberty is to construe section 3735 as permitting the suspension of sentence.

Precedent does exist for suspending sentence under a mandatory sentencing law. In Commonwealth v. Wentz, 52 D.&C. 690 (1945), defendant was convicted of violating section 819(a) of the Vehicle Code of 1929, May 1, P.L. 905, no. 403, as amended, 1937, June 29 P.L. 2329, no. 447. Section 1204.1 of the Vehicle Code provided that "The fines and penalties provided for in this act are mandatory, and no magistrate or judge shall impose any penalty . . . varying from the penalties prescribed herein . . ." The court, per President Judge Wright, held that the court still possessed the power to suspend sentences in that "no such deprivation of power can be grounded upon the above legislative language." 52 D.&C. at 693.

This same reasoning was also invoked to permit suspended sentences in Commonwealth v. Harris, supra, and Commonwealth ex rel. Hill v. Burke, supra.

The case of Commonwealth v. Bozzi, 178 Pa. Super. 224, 116 A.2d 290 (1955), also recognizes that the power to suspend sentences is inherent unless specifically taken away by the legislature. In that case, defendant was sentenced for narcotics violations under section 12 of the Act of July 11, 1917, P.L. 758, as amended June 19, 1953, P.L. 290, 35

P.S. §865 (now repealed), which provided a minimum sentence and prohibited the suspension of sentence. Judge Wright (See: Commonwealth v. Wentz, supra), writing for the court, stated that the express prohibition of suspension of sentences was constitutional, but that in the absence of an express prohibition, the power to suspend sentence remained in the sentencing judge.

A final look at the Statutory Construction Act is helpful. 1 Pa. C.S. §1921(a) states that "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." In this regard, this court notes the statement made at the pre-sentence hearing in this matter by Senator Edward Helfrick, a member of the Governor's Task Force on Drunk Driving and the sponsor of the law containing 75 Pa. C.S. §3735. Senator Helfrick stated that "the intention of the legislature is not to put everyone in jail. It's to get the drunk driver off the road." He further stated that the courts should "have the discretion" to satisfy the goals of this law.

In conclusion, a review of the applicable law of this Commonwealth indicates that the sentencing judge retains the power to suspend sentence even under a mandatory sentencing law, provided the legislature has not expressly prohibited the suspension of sentence in cases arising under such a law. Suspension of sentence should be the exception, not the rule, but suspension is appropriate in certain circumstances, especially where considerations of humanity indicate that suspension is proper.

The sentencing judge may suspend sentence under 75 Pa. C.S. §3735, homicide by vehicle while driving under the influence.

## IV(A): DISCUSSION ON DETERRENCE

Those who urge the mandatory three-year confinement state that the certainty of long imprisonment will be a deterrent to drivers who drink. Such statements parallel the arguments that the death penalty will act as a deterrent to homicide.

While I have favored capital punishment for limited categories of pre-meditated or knowing killers: such as law enforcement killers, hired gun killers, and senseless "mad dog" killers, I am aware of the statistics showing that capital punishment does not deter homicides.

If there is no fear of the death penalty for homicide, then how would fear of three years in imprisonment deter the drunk driver, even mandatory?

I have evidence that the fear of humiliation in possible "bottle and can pick-up along highways," is a deterrent.

I have evidence that the fear of embarrassment in possible service as a pall bearer for another victim of a drunk driver, is a deterrent.

And, I have evidence that the alternative to imprisonment, community service in the hospital emergency room, resulted in hiring defendant, and his male nurse training toward a life career of saving lives.

One conclusion we can draw is that mandatory confinement is certain, while intangible results may come from an alternative to imprisonment.

Another conclusion regarding young people, however, offered to this court in a written response, is that obedience of the law is not based on love of the law, but on fear of the penalty of law, more particularly confinement (imprisonment).

If the permissive phenomena of the past two decades is any measure of the life style of our young

people, then the fear of imprisonment — the mandatory three years for vehicular homicide while DUI — may be a deterrent, a move to obey the law.

Would the chance factor of a judge suspending the mandatory three-years imprisonment in light of the totality of circumstances, and imposing a lesser term of confinement coupled with alternative conditions, minimize the fear of this penalty and thereby erase this possible deterrent?

The instant case cannot answer this question, but our probation staff expresses concern that "suspending" is the first move in eroding the mandate of the legislature. An exception becomes a precedent, a judicial bench mark, to measure future like violations.

How will we compare and contrast future violators by age, education, job, race, religion, family relationship, economic impact, and other unenumerated factors, to justify "suspending" the mandatory three-years imprisonment?

We'll do it "the old-fashioned way": have the punishment fit the crime — impose the penalty which defendant "earned" in violating the law. We have repeatedly stated that legislative mandates on sentencing shackle a judge. And, this court will not be shackled now.

## IV(B): DISCUSSION ON EDUCATION

The fact that defendant is a college student was considered. His academic achievements in high school were recited by his counsel, noted in legislative letters as exhibits, and amplified in the public response following the pre-sentence hearing.

Scholastic status is an element in fixing a penalty. It was considered several years ago when a divinity student was sentenced following a guilty plea to in-

voluntary manslaughter, but, DUI was not a factor. In confining defendant for three months to 24 months, this court noted the effect of losing a quarter in the academic year by remarking that St. Paul suffered imprisonment, yet became a sterling pillar in his church.

The measure of the person will be known if, and when, he or she picks up an interrupted academic career after confinement, and how the lesson of paying the price to society is learned.

## IV(C): DISCUSSION ON PUBLIC INPUT

The three-county daily print media reported the pre-sentence hearing commendably, especially the Milton Standard's details, and the Shamokin NEWS-ITEM's accuracy.

The preponderance of invited public input, consisting of 34 individual letters, two phone calls and two personal contacts with the sentencing judge, expressed in 78.4 percent overall that the severity of mandatory three-year imprisonment in this instance should be suspended, suggesting instead: short periods of confinement (6.2 percent), to longer probation (6.2 percent), to short probation with talks to students (12.4 percent).

## V: APPLYING LAW TO FACTS

The severity of mandatory sentences in this legislation of 48-hours, 30-days, and three-years, on one end of the spectrum, is balanced by the ease of considering ARD applications in first offenses where there is no personal injuries in two-car or multi-vehicle accidents, where damages (if any) are minimal, where the BAC reading is within the range of

consideration, as well as first impression mitigating situations, all embraced by the totality of circumstances.

## VI: FINAL INTRODUCTION TO SENTENCE-ORDER

This is a day of precedent in our pioneering county. It is a new decision in the history of our 213 years court developments. There is no shrinking from taking a bold step to suspend a mandatory minimum sentence of three-years imprisonment and to impose a sentence deemed appropriate in the discretion of this court's review of the totality of circumstances.

The fact that we did not try this case is a matter of judicial economy as well as a savings of taxpayer dollars.

The fact that the district attorney did not nolle prosequi the "Driving Under the Influence — Homicide by Vehicle" charge, and allow defendant to plead to another charge shows that our prosecutor did not seek an easy way out.

The fact that the defense counsel negotiated a plea arrangement with an understanding that this court would bite the bullet and suspend the mandatory minimum of three-years imprisonment — that our prosecutor would not appeal this court's alternative sentence, does not make the impact on defendant any lighter.

And, the fact that what is done today after negotiations, pre-sentence hearing, deliberations, and now decision, focuses attention on our criminal justice system and its operations in our society to punish, to deter, to rehabilitate, to teach our citizenry what the rule of law offers as lessons of behavior.

Yes, we suspend the mandatory minimum sentence of three-years imprisonment with a clear awareness of this act.

And, yes, we assume the traditional duty of a sentencing judge, neither shackled by our inherent authority, nor hobbled by legislative enactment, but within our sound discretionary power and responsibility.

Accordingly, the court enters the following sentences and orders of court.

## SENTENCE AND ORDER OF COURT

And now, January 4, 1985, defendant, Craig J. Zack, having entered a plea of guilty to the above charge knowingly, understandingly and voluntarily on May 9, 1984, which date plea was accepted and directed to be entered. The court sentences defendant, Craig J. Zack, as follows:

1. Defendant shall pay the costs of prosecution;

2. To make restitution to the party entitled of the property taken or damaged by defendant in this offense or the money value thereof;

3. To pay to the collector of court costs the costs and restitution within 12 months after his release from any confinement imposed by this sentence and enter into his own recognizance to insure payment of the same; and

4. To undergo imprisonment in a State Correctional Institution for a term of not less than three years and not more than six years, to date from today, January 4, 1985, with credit for any time served on this offense, unless by operation of law it shall be computed otherwise.

It is further ordered that defendant be delivered to the State Correctional Diagnostic and Classification Center at Camp Hill, Pa., and thereafter to such cor-

rectional institution as shall be designated by the deputy commissioner for treatment in accordance with the law and stand committed until the sentence of the court is complied with.

Execution of this sentence is suspended and defendant is placed on probation for a period of five years under the supervision of the Northumberland County Probation and Parole Department, from this date, January 4, 1985, on the conditions that:

1. Defendant shall pay the costs of prosecution;

2. Defendant shall make restitution to the party entitled of the property taken or damaged by defendant in this offense or the money value thereof; and

3. Defendant shall be of good behavior, shall obey all laws, and shall comply with other conditions of probation as imposed by the Northumberland County Probation and Parole Department.

Should defendant fail to comply with the conditions of this probation, the court may recall defendant and then impose the same sentence that could have been imposed now.

Defendant is advised:

1. That he may file a motion to modify sentence with this court within ten days from the imposition of this sentence;

2. That he may appeal to a higher court within 30 days of the imposition of this sentence; and

3. If he is without funds to appeal, he may apply to this court for the appointment of an attorney to represent him without cost to appeal.

## SENTENCE OF COURT

And now, January 4, 1985, defendant, Craig J. Zack, having entered a plea of guilty to the above charge knowingly, understandingly and voluntarily

on May 9, 1984, which date the plea was accepted and directed to be entered. The court sentences defendant, Craig J. Zack, as follows:

1. Defendant shall pay the costs of prosecution;

2. To make restitution to the party entitled of the property taken or damaged by defendant in this offense or the money value thereof;

3. To pay to the collector of court costs the costs and restitution within 12 months after his release from any confinement imposed by this sentence and enter into his own recognizance to insure payment of the same;

4. To undergo imprisonment in the Northumberland County Prison for a term of not less than six months and not more than 23 months, to date from today, January 4, 1985, with credit for any time served on this offense, unless by operation of law it shall be computed otherwise; and

5. To complete 40 hours of community service work, speaking to students at all of the high schools in and for Northumberland County, said work to be completed while undergoing the minimum sentence order herein.

Defendant is advised:

1. That he may file a motion to modify sentence with this court within ten days from the imposition of this sentence;

2. That he may appeal to a higher court within 30 days of the imposition of this sentence; and

3. If he is without funds to appeal, he may apply to this court for the appointment of an attorney to represent him without cost in the appeal.

## SENTENCE OF COURT

And now, January 4, 1985, defendant, Craig J. Zack, having entered a plea of guilty to the above charge knowingly, understandingly and voluntarily

on May 9, 1984, which date the plea was accepted and directed to be entered. The court sentences defendant, Craig J. Zack, as follows:

1. Defendant shall pay the costs of prosecution and pay a fine in the sum of $500 to the Commonwealth of Pennsylvania for the use of the County of Northumberland;

2. To make restitution to the party entitled of the property taken or damaged by defendant in this offense or the money value thereof;

3. To pay to the collector of court costs the fine, costs and restitution within 12 months after his release from any confinement imposed by this sentence and enter into his one recognizance to insure payment of the same;

4. To undergo imprisonment in the Northumberland County Prison for a term of not less than six months and not more than 13 months, said sentence shall be concurrent to sentence in count 5 and begin and be computed from today, January 4, 1985, with credit for any time served on this offense, unless by operation of law it shall be computed otherwise;

5. Defendant shall participate in and complete the "Driving Under the Influence/Counter-Measures Program" and such further treatment for drug/alcohol abuse as may be recommended by the program coordinator as directed by the Northumberland County Adult Probation and Parole Department. It is further ordered that defendant pay the sum of $125 to be applied to the costs of the program, to whomever the program coordinator designates; and

6. The Department of Transportation of the Commonwealth of Pennsylvania is directed not to restore, once suspended, the motor vehicle operat-

ing privileges of defendant until all financial obligations hereof are fully paid.

Defendant shall stand committed until this order of sentence is complied with.

Defendant is advised:

1. That he may file a motion to modify sentence with this court within ten days from the imposition of this sentence;

2. That he may appeal to a higher court within 30 days of the imposition of this sentence; and

3. If he is without funds to appeal, he may apply to this court for the appointment of an attorney to represent him without cost to appeal.

## SENTENCE OF COURT

And now, January 4, 1985, defendant, Craig J. Zack, having entered a plea of guilty to the above charge knowingly, understandingly and voluntarily on May 9, 1984, which date the plea was accepted and directed to be entered. The court sentences defendant, Craig J. Zack, as follows:

1. Defendant shall pay the cost of prosecution and pay a fine in the sum of $25 to the Commonwealth of Pennsylvania for the use of the County of Northumberland; and

2. To pay to the collector of court costs the fine and costs within six months, and enter into his own recognizance to insure payment of the same.

Defendant shall stand committed until this sentence of the court is complied with.

Defendant is advised:

1. That he may file a motion to modify sentence with this court within ten days from the imposition of this sentence;

2. That he may appeal to a higher court within 30 days of the imposition of this sentence; and

3. If he is without funds to appeal, he may apply to this court for the appointment of an attorney to represent him without cost to appeal.

## SENTENCE OF COURT

And now, January 4, 1985, defendant, Craig J. Zack, having entered a plea of guilty of the above charge knowingly, understandingly, and voluntarily on May 9, 1984, which date the plea was accepted and directed to be entered. The court sentences defendant, Craig J. Zack, as follows:

1. Defendant shall pay the cost of prosecution and pay a fine in the sum of $25 to the Commonwealth of Pennsylvania for the use of the County of Northumberland; and

2. To pay to the collector of court costs the fine and costs within six months, and enter into his own recognizance to insure payment of the same.

Defendant shall stand committed until this sentence of the court is complied with.

Defendant is advised:

1. That he may file a motion to modify sentence with this court within ten days from the imposition of this sentence;

2. That he may appeal to a higher court within 30 days of the imposition of this sentence; and

3. If he is without funds to appeal, he may apply to this court for the appointment of an attorney to represent him without cost to appeal.

## SENTENCE OF COURT

And now, January 4, 1985, defendant, Craig J. Zack, having entered a plea of guilty of the above charge knowingly, understandingly, and voluntarily on May 9, 1984, which date the plea was accepted

and directed to be entered. The court sentences defendant, Craig J. Zack, as follows:

1. Defendant shall pay the cost of prosecution and pay a fine in the sum of $50 to the Commonwealth of Pennsylvania for the use of the County of Northumberland; and

2. To pay to the collector of court costs the fine and costs within six months, and enter into his own recognizance to insure payment of the same.

Defendant shall stand committed until this sentence of the court is complied with.

Defendant is advised:

1. That he may file a motion to modify sentence with this court within ten days from the imposition of this sentence;

2. That he may appeal to a higher court within 30 days of the imposition of this sentence; and

3. If he is without funds to appeal, he may apply to this court for the appointment of an attorney to represent him without cost to appeal.